GREEN TREE FINANCIAL CORP.-ALABAMA ET AL.
*v.* RANDOLPH

No. 99–1235.   Argued October 3, 2000—Decided December 11, 2000

80

REHNQUIST, C. J., delivered the opinion of the Court, Part II of which was unanimous and Parts I and III of which were joined by O'CONNOR, SCALIA, KENNEDY, and THOMAS, JJ. GINSBURG, J., filed an opinion concurring in part and dissenting in part, in which STEVENS and SOUTER, JJ., joined, and in which BREYER, J., joined as to Parts I and III, *post*, p. 92.

*Carter G. Phillips* argued the cause for petitioners. With him on the briefs were *Paul J. Zidlicky, Robert A. Huffaker,* and *William H. Webster.*

*Joseph M. Sellers* argued the cause for respondent. With him on the brief were *Suzette M. Malveaux, Deborah J. Vagins, C. Knox McLaney III,* and *Lynn W. Jinks III.**

---

*Briefs of *amici curiae* urging reversal were filed for the Alabama Manufactured Housing Institute by *Robert E. Sasser;* for the American Arbitration Association by *Florence Peterson, John M. Townsend, Daniel Wolf,* and *James H. Carter;* for the American Bankers Association et al. by *Christopher R. Lipsett, Eric J. Mogilnicki,* and *Todd Zubler;* and for the Equal Employment Advisory Council by *Ann Elizabeth Reesman.*

Briefs of *amici curiae* urging affirmance were filed for the Consumers Union of the United States by *Sally J. Greenberg;* for Public Citizen by *Alan B. Morrison* and *Paul Levy;* for Trial Lawyers for Public Justice

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In this case we first address whether an order compelling arbitration and dismissing a party's underlying claims is a "final decision with respect to an arbitration" within the meaning of §16(a)(3) of the Federal Arbitration Act, 9 U. S. C. §16(a)(3), and thus is immediately appealable pursuant to that Act. Because we decide that question in the affirmative, we also address the question whether an arbitration agreement that does not mention arbitration costs and fees is unenforceable because it fails to affirmatively protect a party from potentially steep arbitration costs. We conclude that an arbitration agreement's silence with respect to such matters does not render the agreement unenforceable.

I

Respondent Larketta Randolph purchased a mobile home from Better Cents Home Builders, Inc., in Opelika, Alabama. She financed this purchase through petitioners Green Tree Financial Corporation and its wholly owned subsidiary, Green Tree Financial Corp.-Alabama. Petitioners' Manufactured Home Retail Installment Contract and Security Agreement required that Randolph buy Vendor's Single Interest insurance, which protects the vendor or lienholder against the costs of repossession in the event of default. The agreement also provided that all disputes arising from,

---

et al. by *F. Paul Bland, Jr., Arthur H. Bryant,* and *Jeffrey White;* and for Terry Johnson et al. by *Daniel A. Edelman* and *James O. Latturner.*

Briefs of *amici curiae* were filed for the Chamber of Commerce of the United States of America by *Alan S. Kaplinsky, David H. Pittinsky, Thomas B. Roberts,* and *Robin S. Conrad;* for the National Arbitration Forum by *Edward C. Anderson, David F. Herr,* and *Michael C. McCarthy;* for the National Association of Consumer Advocates by *Patricia Sturdevant* and *Michael D. Donovan;* and for AARP et al. by *Stacy Canan, Jean Constantine-Davis, Nina F. Simon, Deborah Zuckerman, Michael R. Schuster,* and *Elizabeth Renuart.*

or relating to, the contract, whether arising under case law or statutory law, would be resolved by binding arbitration.[1]

Randolph later sued petitioners, alleging that they violated the Truth in Lending Act (TILA), 15 U. S. C. § 1601 *et seq.*, by failing to disclose as a finance charge the Vendor's Single Interest insurance requirement. She later amended her complaint to add a claim that petitioners violated the Equal Credit Opportunity Act, 15 U. S. C. §§ 1691–1691f, by requiring her to arbitrate her statutory causes of action. She brought this action on behalf of a similarly situated class. In lieu of an answer, petitioners filed a motion to compel arbitration, to stay the action, or, in the alternative, to dismiss. The District Court granted petitioners' motion to compel arbitration, denied the motion to stay, and dismissed Randolph's claims with prejudice. The District Court also denied her request to certify a class. 991 F. Supp. 1410 (MD Ala. 1997). She requested reconsideration, asserting that

---

[1] The arbitration provision states in pertinent part: "All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U. S. C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws, including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract." Joint Lodging 37.

she lacked the resources to arbitrate and, as a result, would have to forgo her claims against petitioners. See Plaintiff's Motion for Reconsideration, Record Doc. No. 53, p. 9. The District Court denied reconsideration. 991 F. Supp., at 1425–1426. Randolph appealed.

The Court of Appeals for the Eleventh Circuit first held that it had jurisdiction to review the District Court's order because that order was a final decision. 178 F. 3d 1149 (1999). The Court of Appeals looked to § 16 of the Federal Arbitration Act (FAA), 9 U. S. C. § 16, which governs appeal from a district court's arbitration order, and specifically § 16(a)(3), which allows appeal from "a final decision with respect to an arbitration that is subject to this title." The court determined that a final, appealable order within the meaning of the FAA is one that disposes of all the issues framed by the litigation, leaving nothing to be done but execute the order. The Court of Appeals found the District Court's order within that definition.

The court then determined that the arbitration agreement failed to provide the minimum guarantees that respondent could vindicate her statutory rights under the TILA. Critical to this determination was the court's observation that the arbitration agreement was silent with respect to payment of filing fees, arbitrators' costs, and other arbitration expenses. On that basis, the court held that the agreement to arbitrate posed a risk that respondent's ability to vindicate her statutory rights would be undone by "steep" arbitration costs, and therefore was unenforceable. We granted certiorari, 529 U. S. 1052 (2000), and we now affirm the Court of Appeals with respect to the first conclusion, and reverse it with respect to the second.

II

Section 16 of the Federal Arbitration Act, enacted in 1988, governs appellate review of arbitration orders. 9 U. S. C. § 16. It provides:

 

"(a) An appeal may be taken from—

"(1) an order—

"(A) refusing a stay of any action under section 3 of this title,

"(B) denying a petition under section 4 of this title to order arbitration to proceed,

"(C) denying an application under section 206 of this title to compel arbitration,

"(D) confirming or denying confirmation of an award or partial award, or

"(E) modifying, correcting, or vacating an award;

"(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

"(3) a final decision with respect to an arbitration that is subject to this title.

"(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

"(1) granting a stay of any action under section 3 of this title;

"(2) directing arbitration to proceed under section 4 of this title;

"(3) compelling arbitration under section 206 of this title; or

"(4) refusing to enjoin an arbitration that is subject to this title."

The District Court's order directed that arbitration proceed and dismissed respondent's claims for relief. The question before us, then, is whether that order can be appealed as "a final decision with respect to an arbitration" within the meaning of § 16(a)(3). Petitioners urge us to hold that it cannot. They rely, in part, on the FAA's policy favoring arbitration agreements and its goal of "mov[ing] the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Memorial*

*Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 22 (1983); *id.*, at 24. In accordance with that purpose, petitioners point out, § 16 generally permits immediate appeal of orders hostile to arbitration, whether the orders are final or interlocutory, but bars appeal of interlocutory orders favorable to arbitration.

Section 16(a)(3), however, preserves immediate appeal of any "final decision with respect to an arbitration," regardless of whether the decision is favorable or hostile to arbitration. And as petitioners and respondent agree, the term "final decision" has a well-developed and longstanding meaning. It is a decision that "'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 867 (1994), and *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 467 (1978) (both quoting *Catlin* v. *United States*, 324 U. S. 229, 233 (1945)). See also *St. Louis, I. M. & S. R. Co.* v. *Southern Express Co.*, 108 U. S. 24, 28–29 (1883). Because the FAA does not define "a final decision with respect to an arbitration" or otherwise suggest that the ordinary meaning of "final decision" should not apply, we accord the term its well-established meaning. See *Evans* v. *United States*, 504 U. S. 255, 259–260 (1992).

The District Court's order directed that the dispute be resolved by arbitration and dismissed respondent's claims with prejudice, leaving the court nothing to do but execute the judgment. That order plainly disposed of the entire case on the merits and left no part of it pending before the court. The FAA does permit parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it), but the existence of that remedy does not vitiate the finality of the District Court's resolution of the claims in the instant proceeding. 9 U. S. C. §§ 9, 10, 11. The District Court's order was therefore "a final decision with respect to an arbitration" within the meaning of § 16(a)(3), and

an appeal may be taken.[2] See *Sears, Roebuck & Co.* v. *Mackey,* 351 U. S. 427, 431 (1956) (explaining that had the District Court dismissed all the claims in an action, its decision would be final and appealable); *Catlin, supra,* at 236 (noting that had petitioners' motion to dismiss been granted and a judgment of dismissal entered, "clearly there would have been an end of the litigation and appeal would lie . . .").

Petitioners contend that the phrase "final decision" does not include an order compelling arbitration and dismissing the other claims in the action, when that order occurs in an "embedded" proceeding, such as this one. Brief for Petitioners 26. "Embedded" proceedings are simply those actions involving both a request for arbitration and other claims for relief. "Independent" proceedings, by contrast, are actions in which a request to order arbitration is the sole issue before the court. Those Courts of Appeals attaching significance to this distinction hold that an order compelling arbitration in an "independent" proceeding is final within the meaning of § 16(a)(3), but that such an order in an "embedded" proceeding is not, even if the district court dismisses the remaining claims.[3] Petitioners contend that the distinc-

---

[2] Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable. 9 U. S. C. § 16(b)(1). The question whether the District Court should have taken that course is not before us, and we do not address it.

[3] The majority of Courts of Appeals have so opined, contrary to the instant decision of the Court of Appeals for the Eleventh Circuit. See, e. g., *Seacoast Motors of Salisbury, Inc.* v. *Chrysler Corp.,* 143 F. 3d 626, 628–629 (CA1 1998); *Altman Nursing, Inc.* v. *Clay Capital Corp.,* 84 F. 3d 769, 771 (CA5 1996); *Napleton* v. *General Motors Corp.,* 138 F. 3d 1209, 1212 (CA7 1998); *Gammaro* v. *Thorp Consumer Discount Co.,* 15 F. 3d 93, 95 (CA8 1994); *McCarthy* v. *Providential Corp.,* 122 F. 3d 1242, 1244 (CA9 1997). But see *Arnold* v. *Arnold Corp.—Printed Communications for Business,* 920 F. 2d 1269, 1276 (CA6 1990) (order compelling arbitration in an "embedded" proceeding treated as a final judgment when the District Court dismissed the action in deference to arbitration and had nothing left to do but execute the judgment); *Armijo* v. *Prudential Insurance Co. of America,* 72 F. 3d 793, 797 (CA10 1995) (same).

tion between independent and embedded proceedings and its consequences for finality were so firmly established at the time of § 16's enactment that we should assume Congress meant to incorporate them into § 16(a)(3). See Brief for Petitioners 23–26.

We disagree. It does not appear that, at the time of § 16(a)(3)'s enactment, the rules of finality were firmly established in cases like this one, where the District Court both ordered arbitration and dismissed the remaining claims.[4] We also note that at that time, Courts of Appeals did not have a uniform approach to finality with respect to orders directing arbitration in "embedded" proceedings.[5] The term "final decision," by contrast, enjoys a consistent and longstanding interpretation. Certainly the plain language of the statutory text does not suggest that Congress intended to incorporate the rather complex independent/

---

[4] *Seacoast Motors of Salisbury, Inc., supra*, at 628 (noting in 1998 that the Court had not before addressed the question whether a district court order directing arbitration and dismissing the proceedings was a "final decision" within the meaning of § 16(a)(3)); *Napleton, supra*, at 1212 (noting in 1998 that the appeal at issue adds an "unfamiliar ingredient" because the District Court ordered arbitration and dismissed the proceedings).

[5] *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F. 2d 155, 158 (CA6 1983) (rejecting the argument that because a declaratory judgment and other relief was sought in suit where arbitration was ordered, order to arbitrate should not be appealable); *Howard Elec. & Mechanical Co. v. Frank Briscoe Co.*, 754 F. 2d 847, 849 (CA9 1985) (plaintiff brought suit for work performed under contract and then sought arbitration; order compelling arbitration held appealable). Cf. *In re Hops Antitrust Litigation*, 832 F. 2d 470, 472–473 (CA8 1987) (District Court order requiring arbitration of some claims before it is not a final appealable order because other matters remained pending before the court); *County of Durham v. Richards & Assocs., Inc.*, 742 F. 2d 811, 813, n. 3 (CA4 1984) (noting that a number of Courts of Appeals have held that an order compelling arbitration may be appealed even when it is entered in the course of a dispute over the underlying claim). See generally 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.17, pp. 19–25 (1992).

embedded distinction, and its consequences for finality, into § 16(a)(3). We therefore conclude that where, as here, the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is "final" within the meaning of § 16(a)(3), and therefore appealable.

## III

We now turn to the question whether Randolph's agreement to arbitrate is unenforceable because it says nothing about the costs of arbitration, and thus fails to provide her protection from potentially substantial costs of pursuing her federal statutory claims in the arbitral forum. Section 2 of the FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. In considering whether respondent's agreement to arbitrate is unenforceable, we are mindful of the FAA's purpose "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 24 (1991).

In light of that purpose, we have recognized that federal statutory claims can be appropriately resolved through arbitration, and we have enforced agreements to arbitrate that involve such claims. See, *e. g., Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477 (1989) (Securities Act of 1933); *Shearson/American Express Inc.* v. *McMahon,* 482 U. S. 220 (1987) (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.,* 473 U. S. 614 (1985) (Sherman Act). We have likewise rejected generalized attacks on arbitration that rest on "suspicion of arbitration as a method of weakening the protec-

tions afforded in the substantive law to would-be complainants." *Rodriguez de Quijas, supra,* at 481. These cases demonstrate that even claims arising under a statute designed to further important social policies may be arbitrated because " 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' " the statute serves its functions. See *Gilmer, supra,* at 28 (quoting *Mitsubishi, supra,* at 637).

In determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. See *Gilmer, supra,* at 26; *Mitsubishi, supra,* at 628. In this case, it is undisputed that the parties agreed to arbitrate all claims relating to their contract, including claims involving statutory rights. Nor does Randolph contend that the TILA evinces an intention to preclude a waiver of judicial remedies. She contends instead that the arbitration agreement's silence with respect to costs and fees creates a "risk" that she will be required to bear prohibitive arbitration costs if she pursues her claims in an arbitral forum, and thereby forces her to forgo any claims she may have against petitioners. Therefore, she argues, she is unable to vindicate her statutory rights in arbitration. See Brief for Respondent 29–30.

It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter.[6] As the Court of Appeals

---

[6] In Randolph's motion for reconsideration in the District Court, she asserted that "[a]rbitration costs are high" and that she did not have the resources to arbitrate. But she failed to support this assertion. She first acknowledged that petitioners had not designated a particular arbitration association or arbitrator to resolve their dispute. Her subsequent discus-

recognized, "we lack . . . information about how claimants fare under Green Tree's arbitration clause." 178 F. 3d, at 1158. The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

To invalidate the agreement on that basis would undermine the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital*, 460 U. S., at 24. It would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. See *Gilmer, supra,* at 26; *McMahon, supra,* at 227. We have

---

sion of costs relied entirely on unfounded assumptions. She stated that "[f]or the purposes of this discussion, we will assume filing with the [American Arbitration Association], the filing fee is $500 for claims under $10,000 and this does not include the cost of the arbitrator or administrative fees." Randolph relied on, and attached as an exhibit, what appears to be informational material from the American Arbitration Association that does not discuss the amount of filing fees. She then noted: "[The American Arbitration Association] further cites $700 per day as the average arbitrator's fee." For this proposition she cited an article in the Daily Labor Report, February 15, 1996, published by the Bureau of National Affairs, entitled Labor Lawyers at ABA Session Debate Role of American Arbitration Association. Plaintiff's Motion for Reconsideration, Record Doc. No. 53, pp. 8–9. The article contains a stray statement by an association executive that the average arbitral fee is $700 per day. Randolph plainly failed to make any factual showing that the American Arbitration Association would conduct the arbitration, or that, if it did, she would be charged the filing fee or arbitrator's fee that she identified. These unsupported statements provide no basis on which to ascertain the actual costs and fees to which she would be subject in arbitration.

In this Court, Randolph's brief lists fees incurred in cases involving other arbitrations as reflected in opinions of other Courts of Appeals, while petitioners' counsel states that arbitration fees are frequently waived by petitioners. None of this information affords a sufficient basis for concluding that Randolph would in fact have incurred substantial costs in the event her claim went to arbitration.

held that the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue. See *Gilmer, supra; McMahon, supra.* Similarly, we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. Randolph did not meet that burden. How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point. The Court of Appeals therefore erred in deciding that the arbitration agreement's silence with respect to costs and fees rendered it unenforceable.[7]

The judgment of the Court of Appeals is affirmed in part and reversed in part.

*It is so ordered.*

JUSTICE GINSBURG, with whom JUSTICE STEVENS and JUSTICE SOUTER join, and with whom JUSTICE BREYER joins as to Parts I and III, concurring in part and dissenting in part.

I

I join Part II of the Court's opinion, which holds that the District Court's order, dismissing all the claims before it, was a "final," and therefore immediately appealable, decision. *Ante,* at 84–89. On the matter the Court airs in Part III,

---

[7] We decline to reach respondent's argument that we may affirm the Court of Appeals' conclusion that the arbitration agreement is unenforceable on the alternative ground that the agreement precludes respondent from bringing her claims under the TILA as a class action. See Brief for Respondent 39–48. The Court of Appeals did not pass on this question, and we need not decide here issues not decided below. *Roberts* v. *Galen of Va., Inc.,* 525 U. S. 249 (1999) *(per curiam).*

*ante*, at 89–92—allocation of the costs of arbitration—I would not rule definitively. Instead, I would vacate the Eleventh Circuit's decision, which dispositively declared the arbitration clause unenforceable, and remand the case for closer consideration of the arbitral forum's accessibility.

## II

The Court today deals with a "who pays" question, specifically, who pays for the arbitral forum. The Court holds that Larketta Randolph bears the burden of demonstrating that the arbitral forum is financially inaccessible to her. Essentially, the Court requires a party, situated as Randolph is, either to submit to arbitration without knowing who will pay for the forum or to demonstrate up front that the costs, if imposed on her, will be prohibitive. *Ante*, at 91–92. As I see it, the case in its current posture is not ripe for such a disposition.

The Court recognizes that "the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum." *Ante*, at 90. But, the Court next determines, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration" and "Randolph did not meet that burden." *Ante*, at 91, 92. In so ruling, the Court blends two discrete inquiries: First, is the arbitral forum *adequate* to adjudicate the claims at issue; second, is that forum *accessible* to the party resisting arbitration.

Our past decisions deal with the first question, the *adequacy* of the arbitral forum to adjudicate various statutory claims. See, *e. g., Gilmer* v. *Interstate/Johnson Lane Corp.,* 500 U. S. 20 (1991) (Age Discrimination in Employment Act claims are amenable to arbitration); *Shearson/American Express Inc.* v. *McMahon,* 482 U. S. 220 (1987) (Claims under Racketeer Influenced and Corrupt Organizations Act and Securities Exchange Act are amenable to arbitration).

These decisions hold that the party resisting arbitration bears the burden of establishing the inadequacy of the arbitral forum for adjudication of claims of a particular genre. See *Gilmer*, 500 U. S., at 26; *McMahon*, 482 U. S., at 227. It does not follow like the night the day, however, that the party resisting arbitration should also bear the burden of showing that the arbitral forum would be financially inaccessible to her.

The arbitration agreement at issue is contained in a form contract drawn by a commercial party and presented to an individual consumer on a take-it-or-leave-it basis. The case on which the Court dominantly relies, *Gilmer*, also involved a nonnegotiated arbitration clause. But the "who pays" question presented in this case did not arise in *Gilmer*. Under the rules that governed in *Gilmer*—those of the New York Stock Exchange—it was the standard practice for securities industry parties, arbitrating employment disputes, to pay all of the arbitrators' fees. See *Cole* v. *Burns Int'l Security Servs.*, 105 F. 3d 1465, 1483 (CADC 1997). Regarding that practice, the Court of Appeals for the District of Columbia Circuit recently commented:

> "[I]n *Gilmer*, the Supreme Court endorsed a system of arbitration in which employees are not required to pay for the arbitrator assigned to hear their statutory claims. There is no reason to think that the Court would have approved arbitration in the absence of this arrangement. Indeed, we are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case." *Id.*, at 1484.

### III

The form contract in this case provides no indication of the rules under which arbitration will proceed or the costs a

consumer is likely to incur in arbitration.[1] Green Tree, drafter of the contract, could have filled the void by specifying, for instance, that arbitration would be governed by the rules of the American Arbitration Association (AAA). Under the AAA's Consumer Arbitration Rules, consumers in small-claims arbitration incur no filing fee and pay only $125 of the total fees charged by the arbitrator. All other fees and costs are to be paid by the business party. Brief for American Arbitration Association as *Amicus Curiae* 15–16. Other national arbitration organizations have developed similar models for fair cost and fee allocation.[2] It may be that in this case, as in *Gilmer*, there is a standard practice on arbitrators' fees and expenses, one that fills the blank space in the arbitration agreement. Counsel for Green Tree offered a hint in that direction. See Tr. of Oral Arg. 26 ("Green Tree does pay [arbitration] costs in a lot of instances . . . ."). But there is no reliable indication in this record that Randolph's claim will be arbitrated under any consumer-protective fee arrangement.

---

[1] In Alabama, as in most States, courts interpret a contract's silence (about arbitration fees and costs) according to "usage or custom." *Green Tree Financial Corp. of Ala.* v. *Wampler*, 749 So. 2d 409, 415 (Ala. 1999); see also Restatement (Second) of Contracts §204, Comment *d* (1979) (where an essential term is missing, "the court should supply a term which comports with community standards of fairness and policy"). Cf. *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 944 (1995) (courts should generally apply state contract law principles when deciding whether parties agreed to arbitrate a certain matter); *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U. S. 52, 62–64, and n. 9 (1995) (interpreting arbitration clause according to New York and Illinois law).

[2] They include National Arbitration Forum provisions that limit small-claims consumer costs to between $49 and $175 and a National Consumer Disputes Advisory Committee protocol recommending that consumer costs be limited to a reasonable amount. National Arbitration Forum, Code of Procedure, App. C, Fee Schedule (July 1, 2000); National Consumer Disputes Advisory Committee, Consumer Due Process Protocol, Principle 6, Comment (Apr. 17, 1998), http://www.adr.org/education/education/consumer_protocol.html.

As a repeat player in the arbitration required by its form contract, Green Tree has superior information about the cost to consumers of pursuing arbitration. Cf. *Raleigh* v. *Illinois Dept. of Revenue,* 530 U. S. 15, 21 (2000) ("the very fact that the burden of proof has often been placed on the taxpayer [to disprove tax liability] . . . reflects several compelling rationales . . . [including] the taxpayer's readier access to the relevant information"); 9 J. Wigmore, Evidence § 2486 (J. Chadbourn rev. ed. 1981) (where fairness so requires, burden of proof of a particular fact may be assigned to "party who presumably has peculiar means of knowledge" of the fact); Restatement (Second) of Contracts § 206 (1979) ("In choosing among the reasonable meanings of . . . [an] agreement or a term thereof, that meaning is generally preferred which operates against the [drafting] party . . . ."). In these circumstances, it is hardly clear that Randolph should bear the burden of demonstrating up front the arbitral forum's inaccessibility, or that she should be required to submit to arbitration without knowing how much it will cost her.

As I see it, the Court has reached out prematurely to resolve the matter in the lender's favor. If Green Tree's practice under the form contract with retail installment sales purchasers resembles that of the employer in *Gilmer,* Randolph would be insulated from prohibitive costs. And if the arbitral forum were in this case financially accessible to Randolph, there would be no occasion to reach the decision today rendered by the Court. Before writing a term into the form contract, as the District of Columbia Circuit did, see *Cole,* 105 F. 3d, at 1485,[3] or leaving cost allocation initially to each arbitrator, as the Court does, I would remand for clarification of Green Tree's practice.

---

[3] The court interpreted a form contract to arbitrate employment disputes, silent as to costs, to require the employer "to pay all of the arbitrator's fees necessary for a full and fair resolution of [the discharged employee's] statutory claims." 105 F. 3d, at 1485.

The Court's opinion, if I comprehend it correctly, does not prevent Randolph from returning to court, postarbitration, if she then has a complaint about cost allocation. If that is so, the issue reduces to when, not whether, she can be spared from payment of excessive costs. Neither certainty nor judicial economy is served by leaving that issue unsettled until the end of the line.

For the reasons stated, I dissent from the Court's reversal of the Eleventh Circuit's decision on the cost question. I would instead vacate and remand for further consideration of the accessibility of the arbitral forum to Randolph.[4]

---

[4] Randolph alternatively urges affirmance on the ground that the arbitration agreement is unenforceable because it precludes pursuit of her statutory claim as a class action. But cf. *Johnson* v. *West Suburban Bank,* 225 F. 3d 366 (CA3 2000) (holding arbitration clause in short-term loan agreement enforceable even though it may render class action to pursue statutory claims unavailable). The class-action issue was properly raised in the District Court and the Court of Appeals. I do not read the Court's opinion to preclude resolution of that question now by the Eleventh Circuit. Nothing Randolph has so far done in seeking protection against prohibitive costs forfeits her right to a judicial determination whether her claim may proceed either in court or in arbitration as a class action.