534 F.Supp.2d 815 (2008)
Irene GONZALEZ, et al., etc., Plaintiffs,
v.
MENARD, INC., Defendant.
No. 07 C 2507.
United States District Court, N.D. Illinois, Eastern Division.
January 25, 2008.
As Amended February 4, 2008.
*816 Ryan Anthony Blay, Robert M. Foote, Stephen William Fung, John Craig Ireland of Foote, Meyers & Mielke & Flowers, LLC, Geneva, Kathleen Currie Chavez of Chavez Law Firm P.C., Geneva, Illinois Peter Lawrence Currie of The Law Finn of Peter L. Currie, P.C., St. Charles, IL, for Plaintiff.
Garry B. Zak of Lewis Brisbois Bisgaard & Smith LLP, Chicago, IL. for Defendant.

MEMORANDUM OPINION AND ORDER
MILTON I. SHADUR, Senior District Judge.
This Court has sought, over an extended series of status hearings, to get counsel for defendant Menard, Inc. ("Menard") to face up to the special problem that is posed by its standard inclusion of a mandatory arbitration clause in its employment contracts when an employee charging employment discrimination actionable under Title VII[1] seeks to raise those issues in a class action  ssss rather than that employee's separate individual lawsuit  because of the widespread nature of the asserted harms. But Menard has previously proved intransigent, apparently seeking to transmute its ubiquitous TV slogan directed to its customers, "Save big money at Menard's," to a message, to its employees: "Spend big money to sue Menard's."
Because this Court has expounded at length on the subject over the course of the numerous status hearings, the transcripts of those hearings would best serve to set out a comprehensive statement of the full scope of its reasoning. More recently the parties have submitted their respective drafts of an opinion reflecting this Court's orally expressed views, and Menard's draft (like that submitted in plaintiffs' behalf) finally seems to have recognized the principle that this Court has been urging without success. Nonetheless it seem best, in the interest of completeness, to issue this memorandum opinion and order to provide a less discursive summary of the unreasonableness of Menard's oft-repeated position.
This Court has long honored and enforced contractual undertakings that *817 have chosen the alternative dispute resolution process via arbitration in preference to in-court proceedings. Hence wherever either party to an action on this Court's calendar invokes a contractual arbitration provision, this Court looks to the Federal Arbitration Act. There is one judicially recognized potential exception articulated by the Supreme Court in Green Tree Fin. Corp.-Ala. v. Randolph 531 U.S. 79, 90, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000);
It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively, vindicating her federal statutory rights in the arbitral forum.
* * * * * *
[W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.
And that has, of course, triggered examination of that policy by lower courts (at the appellate level, see, e.g., Livingston v. Assocs. Fin., Inc., 339 F.3d 553 (7th Cir. 2003) and Cooper v. MRM Inv. Co., 367 F.3d 493 (6th Cir.2004)).
Here Menard has responded to the employment discrimination charges advanced by Gonzalez and Stanley, both individually and as putative class representatives, by moving to refer the dispute to binding. arbitration before the American Arbitration Association ("AAA"), relying on the attached Employee. Agreements (Exs. A and B) that those employees respectively signed (and that Menard requires of all its employees). As Paragraph 6 of that Employee Agreement reflects, such arbitration must proceed under AAA's "current version of the National Rules for the Resolution of Employment Disputes," which are also said to "govern the fees in this matter." Moreover, in what appears to be a commendable effort by Menard to avoid the potential problem identified in Green Tree, the contractual provision goes on to state "that the costs of filing a demand for arbitration will not exceed the costs of filing a civil complaint in federal court."
But a sharply different prospect appears when AAA's Employment Arbitration Rules are examined in the context of a case such as this one. Parenthetically, even in the arbitration of individual claims where such arbitration is called for in an individual employment agreement rather than pursuant to an employer-promulgated plan, the AAA schedule of fees and expenses imposes financial burdens on the employee that are substantially above the cost of filing a federal lawsuit (see attached Ex. C, which reproduces a portion of the AAA Employment Arbitration Rules indicated by the marginal marking). But because this opinion focuses on the existence of class-based claims in this action, it is unnecessary to inquire further as to whether the AAA provision is trumped by the limitation on employee-borne expenses specified in Menard's Employee Agreement.[2]
As for the critical issue for purposes of the present ruling, this Court has previously *818 pointed cut to both sides' counsel that the AAA not only has a separate set of Supplementary Rules for Class Arbitrations, but that those Supplementary Rules are expressly made applicable to any dispute that arises out of an agreement that provides for arbitration pursuant to any AAA rules  indeed, those Supplementary Rules are just as expressly said to govern in the case of any inconsistency between those Rules and any other AAA rules (see the marginally marked provisions of Ex. D attached to this opinion). And in this instance, the costs that would be chargeable to Gonzalez and Stanley for pursuing their existing class claims before the AAA are staggering in relation to their financial circumstances as set out in their affidavits submitted to this Court: Those Supplementary Rules provide for a $3,250 preliminary filing fee and then a supplementary filing fee that, if the Complaint's statement as to the amount in controversy is considered, amounts to an additional $14,000.
When that situation came to light as a result of the submissions that the parties provided in response to this Court's inquiries, this Court sought a possible path to accommodate Menard's desire for arbitration by asking its counsel whether his client would be prepared to treat the very modest limit on an employee's financial exposure in the Employee Agreement as extending to the class claims here, with Menard committing itself to pick up the balance of the AAA tab. That inquiry was met with a flat-out refusal, with Menard's counsel offering the response that a division of those very large class action expenses among the members of a certified class would not be onerous for any individual member of the class, including Gonzalez and Stanley as class representatives. But the short answer to that "generous" response is that AAA costs are incurred up front, so that Menard's proposed "solution" would force Gonzalez and Stanley to gamble on being successful in obtaining class certification, a highly unfair risk to impose on persons of such modest means (and a risk that does not exist in any federal class action lawsuit where the class-based claim is non-frivolous).
Thus Menard's response equates to an in terrorem effort to discourage this or any other proposed class action, an effort that runs counter to the basic principles that are implicit in Fed.R.Civ.P. 23. This Court has nonetheless afforded the parties an opportunity to consider whether conventional principles of severability might save the potential validity of the contractual arbitration provisions only as to the individual claims by Gonzalez and Stanley (even though that would create the awkward and expensive scenario of contemporaneous legal proceedings in both forums  before the AAA as to the individual claims and before this Court as to the class claims).[3] But in this instance the document that Menard has drafted and requires its employees to sign is unitary and all-encompassing in referring all employment disputes to the AAA, and the AAA's rules are similarly unitary. Severability is really not an appropriate option in this instance, even apart from the relevant considerations of duplicative activity and the need to tilt lances in two different forums at the same time.
In sum, Menard's motion for referral to AAA arbitration must be and is denied.[4] Gonzalez and Stanley have satisfied *819 the test of demonstrating "prohibitively expensive" arbitration within the teaching of Green Tree. Because Employee Agreement ¶ 6's arbitration requirement is invalid and unenforceable in the circumstances of this case, the action will go forward in this District Court. This Court's previously-set February 18 status hearing date will remain in effect to discuss further proceedings.

EXHIBIT A

*820 EXHIBIT B

EXHIBIT C
provides that the employer pay more.
There shall be no filing fee charged for a counterclaim.
(ii) Hearing Fees
*821 For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.
For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.
There, is no AAA hearing fee for the initial Arbitration Management Conference.
(iii) Postponement/Cancellation Fees
A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.
A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.
(iv) Hearing Room Rental
The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the, parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.
(v) Abeyance Fee
Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.
(vi) Expenses
All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.
For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:
The AAA's Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiable employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.
The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. Unless the parties agree otherwise, arbitrator compensation, and expenses as defined in section (v) below, shall be borne equally by the parties and are subject to reallocation by the arbitrator in the award.
(i) Filing Fees and Case Service Fees
An initial filing fee is payable in full by the filing party when a claim, counterclaim, or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will, remain due and will not be refunded.
These fees will be billed in accordance with the following schedule:

 Initial Case
Amount of Claim Filing Fee Service Fee
Above $0 to $10,000 $ 750 $ 200
Above $10,000 to $75,000 $ 950 $ 300
Above $75,000 to $150,000 $ 1,800 $ 750
Above $150,000 to $300,000 $ 2,750 $1,250
Above $300,000 to $500,000 $ 4,250 $1,750
Above $500,000 to $1,000,000 $ 6,000 $2,500
Above $1,000,000 to $5,000,000 $ 8,000 $3,250
*822
Above $5,000,000 to
$10,000,000 $10,000 $4,000
Above $10,000,000 * *
Nonmonetary Claims** $ 3,250 $1,250

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee. Fee Schedule for Claims in Excess of $10 Million The following is the fee schedule for use in disputes involving claims in. excess of $10 million. If you have any questions, please consult your local AAA office or case management center.
Fee Schedule for Claims in Excess of $10 Million
The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

 Case
Claim Size Fee Service Fee
$10 million and above Base fee of $ 12,500 $6,000
 plus .01% of the
 amount of claim
 above $ 10 million.
 Filing fees capped
 at $65,000

Fees are subject to increase if the amount of a claim, or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

EXHIBIT D
Supplementary Rules for Class ARBITRATIONS
Effective Date October 8, 2003
1. Applicability
2. Class Arbitration Roster and Number of Arbitrators
3. Construction of the Arbitration Clause
4. Class Certification
5. Class Determination Award
6. Notice of Class Determination
7. Final Award
8. Settlement, Voluntary Dismissal, or Compromise
9. Confidentiality; Class Arbitration Docket
10. Form and Publication of Awards
11. Administrative Fees and Suspension for Nonpayment
12. Applications to Court and Exclusion of Liability
1. Applicability
(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.
(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice *823 to the interests of absent members of a class or purported class.
(c) Whenever a court has, by order, ad dressed and resolved any matte that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.
2. Class Arbitration Roster and Number of Arbitrators
(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators.
(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA, in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes both one and three
NOTES
[1] Here plaintiffs Irene Gonzalez ("Gonzalez") and Kenneth Stanley ("Stanley") have charged that they were respectively victims of race-based and color-based discrimination, as well as retaliatory conduct, and that those violations on Menard's part were pervasive, justifying the institution and prosecution of a class action in those respects.
[2] That is not entirely clear: Although the Employee Agreement speaks in terms of "the costs of filing a demand for arbitration" not exceeding the $350 filing fee for a federal court lawsuit, the AAA Rules in Ex. C schedule both an "initial filing fee" and a "case service fee," with the latter "be[ing] incurred for all cases that proceed to their first hearing." Quaere: Are both of those fees encompassed within "the costs of filing a demand," so that they are cabined by the $350 limitation, or does the limitation apply only to the "initial filing fee"? But as suggested in the text, it is unnecessary to address that possible ambiguity in the Employee Agreement at this point because the costs spelled out in Ex. C are beggared by the costs of class arbitration (the subject that controls the current ruling and that is addressed in the next portion of this opinion).
[3] It may be noted that Employee Agreement ¶ 7 provides for the possibility of severability "to the extent that [a court] believes to be reasonable under the circumstances existing at that time." Menard's counsel responded by citing to a few authorities that this Court has considered and finds inadequate to the task here.
[4] Menard's submission of a draft opinion in response to this Court's request does not reflect a withdrawl of that motion.