NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois  60604**


Argued February 24, 2011
Decided April 28, 2011


*Before*

WILLIAM J. BAUER,  *Circuit Judge*

RICHARD A. POSNER,  *Circuit Judge*

DANIEL A. MANION,  *Circuit Judge*


Nos. 09-3389 & 10-3418

| | |
|---|---|
| Tonya M. Baumann, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of |
| | Indiana, Indianapolis Division |
| *v.* | |
| | No. 08 CV 1385 |
| The Finish Line, Inc. | |
| *Defendant-Appellee*. | **Larry J. McKinney**, *Judge*. |


**O R D E R**

Before The Finish Line, Inc. hired Tonya Baumann as a consumer-service representative, she signed a contract agreeing to resolve any claims concerning her employment through arbitration. When she was fired six weeks later, she sued in federal court claiming she was discriminated against. The Finish Line moved to compel arbitration and the district court agreed, dismissing Baumann's complaint. Baumann appeals. Because Baumann agreed to arbitrate her claims against The Finish Line and she has not established that the costs associated with arbitration would be prohibitively high, we affirm.

I.

Baumann began working for The Finish Line as a temporary worker in late November 2007. A few weeks later, in early January, she was hired as a full-time consumer-service representative. When she applied for the full-time position, Baumann filled out a standard job application. It had several forms, including an "Applicant Statement" that provided that the employee would settle any and all claims arising out her "employment with The Finish Line, exclusively by final and binding arbitration." It also provided that "[c]omplete details of my agreement to submit these claims to arbitration are contained in The Finish Line, Inc. Employee Dispute Resolution Plan, which has been made available for my review prior to the execution of this application." Baumann signed and dated the Applicant Statement and began working for The Finish Line immediately thereafter. Within six weeks, she was fired after making several complaints about harassment, shift changes, and inconsiderate treatment after suffering a miscarriage.

She later sued The Finish Line under Title VII, claiming several forms of discrimination. Citing the arbitration agreement signed by Baumann, The Finish Line moved to dismiss the complaint and compel arbitration. In response, Baumann argued that the arbitration agreement was not binding on her and that the potential costs associated with the arbitration were prohibitive, and thus the arbitration provision should not be enforced against her. In a very thorough order, the district court held that under ordinary contract principles she was bound by her agreement to arbitrate. The district court also found that she had failed to establish that the potential cost of arbitration would be prohibitive. Baumann appealed, and while her appeal was pending, she moved for relief from judgment under Federal Rule of Civil Procedure 60(b), citing newly discovered evidence. In support, she submitted the depositions of two supervisors at The Finish Line who did not recall ever receiving the Plan when they were hired. The district court denied Baumann's motion.

II.

Baumann appeals both the district court's decision to compel arbitration and its denial of her motion for relief from judgment. We review de novo the district court's decision to compel arbitration. *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002). And we review its decision denying Baumann relief under Rule 60(b) for an abuse of discretion. *Eskridge v. Cook County*, 577 F.3d 806, 808–09 (7th Cir. 2009).

A.

Baumann's primary argument is that she was not bound to arbitrate her claims because she never received the detailed Plan that set out all the terms and conditions that came with her agreement to arbitrate. She does not dispute that she signed the one paragraph application agreement, or that on it there appears this language:

> Complete details of my agreement to submit these claims to arbitration are contained in The Finish Line, Inc. Employee Dispute Resolution Plan, which has been made available for my review prior to the execution of this application.

And she concedes that her employment was conditioned on her signing the Applicant Statement and agreeing to arbitrate. The only real issue is whether the fact that the Plan was not actually given to her somehow nullifies the arbitration clause.

An agreement to arbitrate is treated like any other contract, and we look to the state law that governs the formation of contracts to determine if there was a valid agreement. *Tinder*, 305 F.3d at 733. In this case, Indiana law applies. Indiana follows the general principle that to incorporate another document by reference, all that is required is a clear reference to the document and a description of its terms so its identity may be ascertained. *MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 785 N.E.2d 632, 639 (Ind. Ct. App. 2003); *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 n.10 (3d Cir. 2003) (discussing the common-law rule). Here, the Applicant Statement formed a contract between Baumann and The Finish Line: in return for being hired, Baumann agreed to bring any claims related to her employment to arbitration. The contract identified and incorporated by reference the Plan as providing the details of the arbitration agreement. It is immaterial whether Baumann exercised her ability to hold and study the Plan; The Finish Line was not required to force her to read it or have her sign a copy of it to incorporate its terms into the contract. Thus, we reject Baumann's argument that the fact that she did not physically receive a copy of the Plan kept her from being bound by her agreement to arbitrate.

B.

Baumann also argues that the abitration agreement should not be enforced because the Plan's cost-splitting terms prohibit her from exercising her rights through arbitration. The Plan provides that Baumann could be forced to share the costs of arbitration, up to the greater of $10,000 or 10% of the amount in controversy. The Plan also provides that the arbitrator can "reduce the Employee's share of the costs and fees upon a showing of substantial need." In support of her argument that the cost of arbitration would be prohibitive, Baumann filed an

affidavit to the effect that she is an unemployed, single mother with two kids, that she lives at her parents' house, and that her only income is $900 a month in child support. The district court held that this failed to establish that the cost of arbitration would be prohibitive.

The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92 (2000). While there is no bright line for when the costs associated with arbitration will be prohibitive, we have outlined the showing a party must make when it seeks to invalidate an arbitration agreement on those grounds. *James v. McDonald's Corp.*, 417 F.3d 672, 678–80 (7th Cir. 2005). In *James* we looked for evidence on two pertinent questions: first, how the party's financial situation will "be factored into an assessment of the arbitration costs under this hardship provision"; and second, how the costs will compare between litigating in the courts versus proceeding in arbitration. *Id.* at 679–80.

Baumann did not provide the district court with any of that information. She merely stated that she has little money and assumed that would be enough to support her claim. But to invalidate an arbitration agreement based on the costs, there must be specific evidence establishing why arbitration would be prohibitively expensive. *Id.* In this case, that means Baumann would have to produce some evidence to show how her income would be factored into the arbitration agreement's hardship provision, and why arbitration would be too costly but litigation in the courts would not be. Without this information, the risk that arbitration would be prohibitively expensive is "too speculative to justify the invalidation of an arbitration agreement." *Green Tree*, 531 U.S. at 91. Thus, the district court did not err in finding Baumann had failed to meet her burden on this issue.[1]

C.

As a final point, Baumann claims the district court erred by not granting her relief from judgment after she submitted newly discovered evidence. This newly discovered evidence consisted of two depositions that Baumann took at the suggestion of the Seventh Circuit mediator—it was thought that these depositions might put some value on Baumann's claim and facilitate a settlement. During the depositions, Baumann sought information from the supervisors about The Finish Line's arbitration policy and whether the Plan was made available to them

---

[1]At oral argument, we determined that at this juncture she is competently represented under a contingency-fee arrangement, and it is likely that litigating the case to this point has already surpassed the minium $10,000 that Baumann may have incurred in arbitration. And as noted above, the arbitrator could reduce the fee if shown substantial need.

when they were hired. Both supervisors could not recall whether it was. This fact, Baumann argues, establishes that The Finish Line's human resources manager lied when she stated in her affidavit that the Plan was made available to Baumann. It does not.

The deposition testimony amounted to the supervisors saying that they did not recall whether the Plan was given to them when they were hired. In this context, the reality of being hired for a job and all the forms that come with it is not lost on us. It is difficult to imagine any person remembering precisely what forms they were given when they started working—there are usually plenty. And those supervisors, like most people when they're seeking a job, only cared about getting hired and they were more than happy to sign whatever forms were handed to them to make sure they got the job. The fact that they could not recall what they signed or what was made available to them does not mean, let alone suggest, that the human resources manager was lying when she said the Plan was made available to Baumann before she was hired. Because we agree with the district court that the newly discovered evidence did not suggest any fraud on The Finish Line's part, the district court did not err in denying Baumann's motion for relief from judgment.

III.

In sum, the district court did not err in holding that the Baumann agreed to resolve all claims related to her employment in arbitration, finding that Baumann failed to establish that the costs of arbitration would be prohibitive, and deciding that Baumann's newly discovered evidence was not grounds for granting her relief from judgment. Accordingly, the judgment of the district court is AFFIRMED.