
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASHLEY ADAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>and<br><br>ALEXANDRA SEVERANCE,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>AT&T MOBILITY, LLC, a Delaware limited liability company,<br><br>Defendant - Appellee. | No. 11-35871<br><br>D.C. No. 2:10-CV-00763-RAJ<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted April 9, 2013
Seattle, Washington

Before: D.W. NELSON, TASHIMA, and CALLAHAN, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Plaintiff Alexandra Severance appeals from the district court's order compelling arbitration and dismissing the case. We review the validity and scope of the arbitration clause de novo and the district court's findings of fact for clear error. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (en banc). We affirm.

## I

AT&T Mobility, LLC ("ATTM") had a contractual right to invoke the arbitration clause in Severance's wireless contract because ATTM is New Cingular Wireless PCS's parent company and New Cingular Wireless PCS was the successor to Severance's contract. Contrary to Severance's view, DC Newco LLC never held the wireless contracts; rather, it owned a complete membership interest in the holding company that owned the contracts, Rural Newco LLC.

## II

Severance's dispute with ATTM is within the scope of the arbitration clause in her wireless contract. Severance argues that her contract uses the word "us" to refer *only* to Unicel. But Unicel is now defunct, so Severance's proposed interpretation would effectively nullify the contract. Severance cannot plausibly argue that the parties intended that the arbitration clause would no longer apply to any dispute now that Unicel has ceased to be. *See Suchoski v. Redshaw*, 660 A.2d

290, 292 (Vt. 1995) ("We interpret the contract according to its terms and the parties' intent as expressed in the contract language.").

At minimum, the contract terms "we" and "us" include Unicel's successors. The only remaining question is whether the arbitration clause applies only to disputes between Severance and Unicel's successor, New Cingular Wireless PCS, or whether it also applies to disputes between Severance and New Cingular Wireless's parent company, ATTM.[1] On this question the text is not perfectly clear, but we think the latter interpretation is correct. The arbitration clause redefines the subject pronoun "we" to include various additional parties, such as assignees, parent companies, successors, subsidiaries, and affiliates. It is unlikely that the object pronoun "us," used in the same sentence, was intended to denote different parties than "we." It is also implausible that the arbitration clause would give the authority to compel arbitration to an entity outside the scope of the clause. A Unicel subsidiary or affiliate would have no reason to elect to arbitrate a dispute under the contract if the arbitration clause only applied to disputes between

---

[1] The Vermont Supreme Court's decision in *Porter v. AT&T Mobility, LLC*, 35 A.3d 1002 (Vt. 2011), does not inform our resolution of this question. There, ATTM failed to prove that the plaintiff's wireless contract was among those it acquired when it bought various Unicel contracts from Verizon. *Id.* at 1006. Here, there is no dispute that Severance's contract was among those that ATTM purchased.

customers and Unicel itself. At the very least, the clause is ambiguous, and the Supreme Court has been clear that "ambiguities as to the scope of the arbitration clause" must be "resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).

## III

The district court did not clearly err when it found that Severance "f[e]ll well short of proving" that she has "no effective means to vindicate [her] rights" in arbitration. *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012) (emphasis omitted). Severance's evidence of her prospective arbitral costs—consisting solely of a declaration by her counsel—explains only that she will be required to engage in "significant" discovery to prove her case. The declaration contains no specific details about the expenses she will incur in arbitration. *Cf. Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 634 F.3d 187, 198 (2d Cir. 2011) (finding that plaintiffs met their burden by submitting a detailed expert affidavit stating that their expert-witness fees would total at least $300,000). And, in any case, under the arbitration terms that apply to Severance, ATTM will bear whatever arbitration costs she incurs. For these reasons, we agree with the district court that Severance has not met her "burden of showing the

4

likelihood of incurring [prohibitively expensive] costs." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

**AFFIRMED**.