## FEDERICA v. MURRAY et.

Common Pleas Court, Hamilton County.

No. A-118546.   Decided July 5, 1950.

Harry Rockwern, Israel Aron, Cincinnati, for plaintiff.
Richard Baker, Harry H. McIlwain, Cincinnati, for defendants.

## OPINION
By SCHMIDT, J.

This action is brought by the plaintiff to recover a balance of $6,453.64 claimed to be due on a promissory note signed by the defendants dated March 24, 1949.

Although admitting the making of the note and the unpaid balance, the defendants deny liability on the ground that the note was given pursuant to a contract between one Ben Peeden and the defendant Willard A. Lene, and that the contract was illegal and void under the law of Kentucky.

The parties have waived a jury.

The facts are these:

Prior to March 18, 1949 the plaintiff was the owner of a cafe and restaurant at 251 Dixie Highway, South Fort Mitchell, Kentucky, which was operated under the name of Kentucky Tavern.

Plaintiff sold the business to Ben Peeden and took certain promissory notes or contractual obligations for payment of part of the purchase price. Subsequently Peeden entered into a contract with the defendant Willard A. Lene, which provided, in substance, that Peeden agreed to sell the entire business, fixtures and chattel property, good will and trade name, to Lene for the sum of $20,500.00. Of this amount $11,600.00 was to be represented by a promissory note payable to the order of the plaintiff in this action on or before three years after date, payable in monthly installments of not less than $300.00 and secured by chattel mortgage on the equipment located in the premises.

The plaintiff, Federica, was not a party to the contract but merely a third party beneficiary.

Under Item 5 of the contract the seller Peeden agreed to permit the buyer to operate the cafe and restaurant under the licenses issued to the seller until such time as the licenses expired, or until such time as the buyer could secure new licenses. It was further agreed under Item 5 that in the event that the buyer could not obtain licenses necessary to operate the cafe, then the payments made under the agreement were to be refunded to the buyer.

The defendants assert that the laws of Kentucky, particularly Section 243.020, Kentucky Revised Statutes, prohibit any person from engaging in the business of the sale or purchase of intoxicating beverages unless such person holds a license as required by the law.

The defendants further urge that under Section 243.100 of the Kentucky Revised Statutes no person who has not had an actual bona fide residence in the State of Kentucky for at least a year may be issued a license for the sale of intoxicating beverages.

It is claimed that Lene, at the time of entering into the contract, was a resident of Ohio and that therefore Peeden

knew he could not obtain the necessary licenses to operate the tavern.

It appears that after the contract was entered into the entire business, including all the chattel property connected therewith, was turned over to the defendant Lene and the cafe was operated by the defendant Lene. Defendant took the stand and admitted that he had, in fact, secured all the necessary Kentucky licenses in his name for the operation of the cafe. He testified that these licenses were procured by him through the assistance of the so-called "Syndicate," which he explained as being the slot machine syndicate operating in Kentucky. He stated that these interests assisted him in obtaining the permit because they placed slot machines in the tavern from which they obtained revenue. He testified further that he was advised to, and in fact did, make a perjured application for the state license by giving a false Kentucky address in the application.

After a short time the defendant Lene, with whom the defendant Dr. Murray had become associated in a financial way, found that the operation was not profitable and closed the business. Certain payments on account of the purchase price had been made by him at that time, but he refused to make further payments.

There is no evidence that the plaintiff in this case was a party to the contract other than to the extent that he agreed that he would accept the note to Lene and Murray in substitution for the obligation which Peeden owed to him at that time. He did not participate in any way in the admitted illegal procedures by which Lene secured his Kentucky licenses.

The credits on the note are as follows:

The defendant paid $1,400.00.

In February 1950 a public sale of the chattels which secured the note was held and the sum of $4,496.36 was realized. The total credits are therefore $5,896.36.

In addition to the face amount of the note, that is, $11,600.00, the plaintiff in January 1950 paid $750.00 on behalf of the defendants to avoid foreclosure of lien by the landlord of the premises. The total obligation due plaintiff from defendants amounts to $12,350.00. Deducting the amount of the credits, the balance due is $6,453.64, which is claimed with interest at six per cent from March 24, 1949.

There is a general rule of law that if the consideration for a contract is illegal and contrary to public policy, the contract is unenforceable. Gordon v. Gordon, 168 Ky. 409. The reason for the rule is, of course, that courts refuse to give their assistance to the enforcement of an agreement which

is in contravention of the law. There are, however, numerous exceptions and qualifications to the general rule. Thus, if part of the consideration is illegal and part is legal, and if the agreement is separable, the Court will enforce the agreement to the extent that it conforms to the law. Furthermore, where the parties are not in **pari delicto,** and one of them has not been guilty of serious moral turpitude, he can recover under the contract, particularly where he has performed on his part and the failure to permit a recovery would work an obvious injustice. See Restatement of the Law of Contracts, Sections 604 and 606.

In the opinion of the court this case comes under the exceptions to the general rule. The contract between Peeden and Lene was primarily a contract for the sale of chattels and equipment connected with the operation of a tavern. The provision that the buyer was to be permitted to operate the tavern under the seller's licenses until he secured permits of his own was only an incidental feature. In any event, the plaintiff in this action did not make any representations of any kind that the buyer would be permitted to or would be assisted in operating the cafe in violation of any law. Indeed, the contrary intention is expressed, since the contract provided that the agreement would be cancelled and the money paid returned if the buyer was unable for any reason to secure the necessary permits. The bargain was fairly made and the defendants secured everything which they bargained for under the contract. The law of Kentucky did not work in any way as an obstacle to defendant's operation since he admitted that he was able, through the influence of the gambling syndicate and through perjury on his part, to obtain the state licenses to conduct the business.

It seems to me that it would be a gross miscarriage of justice if the defendants, having received full consideration under the agreement, were permitted now to escape payment to an innocent third party beneficiary because of their own illegal and reprehensible conduct. If recovery were denied, the reward would go to the guilty and the penalty would fall upon the innocent party. I do not believe that the policy of the law requires a result of this kind. Parties who admittedly participate in corrupt practices in Kentucky should not be permitted to come into Ohio and ask the assistance of the court in relieving them from their legal obligations. If the court yielded to such requests, it would in effect be giving tacit approval to the corruption in which the defendant participated.

In view of the evidence the court finds that the plaintiff is

entitled to judgment for the unpaid balance of $6,453.64 with interest at six percent from March 24, 1949, and the costs of this action.