**TOLEDO POLICE PATROLMEN'S ASSOCIATION, LOCAL 10, IUPA, et al., Appellants,**

**v.**

**CITY OF TOLEDO et al., Appellees.**

[Cite as *Toledo Police Patrolmen's Assn., Local 10, IUPA v. Toledo* (1994), 94 Ohio App.3d 734.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–381.

Decided May 6, 1994.

*Ted Iorio* and *Christine Reardon,* for appellants.

*Geoffrey Davis* and *Fritz Byers,* for appellees.

GLASSER, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted appellee city of Toledo's motion for summary judgment and denied appellant Toledo Police Patrolmen's Association's ("TPPA") motion for summary judgment. Appellants also appeal several other orders of the trial court as set forth in their assignments of error.

The pertinent facts of this case are as follows. The TPPA is the exclusive representative of Toledo police officers below the rank of sergeant. The TPPA and the city are signatories to a collective bargaining agreement ("contract"), two provisions of which are at issue on appeal. The compulsory participation provision requires that an officer participate in and answer questions concerning an internal affairs investigation as follows:

"Before an employee may be charged with any violation of the Divisional Rules and Regulations for a refusal to answer questions or to participate in an

investigation, he shall be advised that his refusal to answer questions or participate in such investigation may be made the basis of such a charge."

The confidentiality provision states that any information obtained in an internal affairs investigation shall remain confidential as follows:

"Any officer brought before the Internal Affairs Unit for investigation has the right, upon request, to have present an attorney. Any information divulged at said interview shall remain confidential."

However, pursuant to judicial interpretation of R.C. 149.43 (Ohio Public Records Act), police department internal affairs documents have been deemed public records for purposes of the statute and are therefore available to the public.[1] The city became involved in several suits in which it was required to release, and allow access to, records of the Toledo Police Department Internal Affairs Section.[2] The TPPA filed a grievance against the release in April 1987, claiming it violated the contract, and filed an unfair labor practice charge with the State Employment Relations Board in July 1987 based upon the city's refusal to arbitrate the grievance. The unfair labor practice charge did not address the subject of the grievance itself (*i.e.*, the release of documents). The State Employment Relations Board dismissed the charge in May 1989, finding no probable cause to believe that an unfair labor practice had been committed.

The TPPA then brought suit in the Lucas County Common Pleas Court on December 6, 1989, against the city, the chief of police, and its city manager. An amended complaint was filed December 20, 1989, which dropped a claim that the internal affairs documents were exempt from public disclosure. The amended complaint requested, *inter alia*, a declaratory judgment that the city had breached the contract by releasing documents generated through internal affairs investigations, and a permanent injunction prohibiting the compelled participation of police officers in the investigations.

The TPPA now appeals various findings from three different orders of the trial court. The first is a July 13, 1990 order granting, in part, the city's motion to dismiss, which, in effect, did away with the city's request for declaratory judgments. The second is a September 8, 1992 order on cross-motions for summary judgment, which, in effect, denied injunctive relief to the TPPA, and the last is an order denying the TPPA's motion for relief from judgment regarding

---

1. *State ex rel. Toledo Blade Co. v. Telb* (1990), 50 Ohio Misc.2d 1, 552 N.E.2d 243; see, also, *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 18 OBR 437, 481 N.E.2d 632 (civil service personnel files of law enforcement officer are public records for purposes of R.C. 149.43).

2. See, *e.g., Henneman v. Toledo* (1988), 35 Ohio St.3d 241, 520 N.E.2d 207; *Toledo v. Baer* (Dec. 31, 1986), Lucas App. No. L–86–132, unreported, 1986 WL 15052.

the rulings on the motions for summary judgment of September 8, 1992. The TPPA assigns five errors to the various orders of the trial court, as follows:

*"ASSIGNMENT OF ERROR NO. 1:* The Trial Court erred in holding that it could not rule upon Appellants' breach of contract claim until after the contractual grievance procedure had been followed, as the Appellants had exhausted all contractual remedies prior to invoking the Trial Court's jurisdiction in the case at bar. [This error is found in the July 13, 1990 Opinion and Judgment Entry.]"

*"ASSIGNMENT OF ERROR NO. 2:* The Trial Court erred in failing to provide Appellant TPPA with a declaratory judgment affirming the contractual *quid pro quo* regarding Internal Affairs interrogations, and thereby deprived the TPPA of its only remedy at law to secure enforcement of the collective bargaining agreement. [This error is found at the Trial Court's July 13, 1990 Opinion and Judgment Entry at 12.]"

*"ASSIGNMENT OF ERROR NO. 3:* The Trial Court erred in denying Appellant Toledo Police Patrolmen's Association's Motion for Summary Judgment, in that the TPPA was entitled to judgment as a matter of law. [This error is found in the September 8, 1992 Order of the Trial Court.] The Trial Court further erred in denying Appellant TPPA's Motion for Relief from Judgment and for Stay of Execution following the entry of summary judgment. [This error is found in the October 30, 1992 order of the Trial Court.] Specifically, in both Orders, the Trial Court erred in holding that the TPPA's position required either alteration of the collective bargaining agreement or, conversely, disregard of Ohio's Public Record law, O.R.C. section 149.43."

*"ASSIGNMENT OF ERROR NO. 4:* The Trial Court erred in basing its holding upon the inaccurate conclusion that negotiations for a successor collective bargaining agreement, which took place during the pendency of the case below, imposed an obligation upon Appellant TPPA to seek alteration of the collective bargaining agreement. The Court further erred in holding upon such premise that the Appellant TPPA 'agreed to' the compelled participation in Internal Affairs investigations. [This error is found in the September 8 and October 30, 1992 Orders of the Trial Court.]"

*"ASSIGNMENT OF ERROR NO. 5:* The Trial Court erred in dismissing the December 7, 1989 Temporary Restraining Order, and in failing to order a permanent injunction against compelled participation in Internal Affairs interrogations. [This error is found in the September 8 and October 30, 1992 Orders of the Trial Court.]"

After scrupulous review of the voluminous record, perusal of the appellate briefs, and original research of the issues, and for the following reasons, we affirm the trial court's decisions.

■ Essentially the TPPA, in its second, third and fourth assignments of error, is requesting this court to declare that police officer members of the TPPA are no longer obligated to answer questions or participate in internal affairs investigations because the city can no longer guarantee that "any information divulged at said interview [will] remain confidential." Specifically, the TPPA would like this court to find that the city breached the contract by releasing such information.

■ We start with the maxim that "the law is supreme, and no contract between individuals can make it lawful to do that which the statute positively commands shall not be done." *Robbins v. Hennessey* (1912), 86 Ohio St. 181, 194–195, 99 N.E. 319, 322. Where performance of a contractual promise is rendered impossible by the law, nonperformance is excused. See, generally, Annotation (1962), 84 A.L.R.2d 43, Section 7.

■ In the instant case, the confidentiality provision of the contract conflicts with R.C. 149.43 and its judicial application in that the statute declares public records be "made available for inspection to any person." 149.43(B). "Public records," for purposes of 149.43, includes the internal affairs and civil service records of law enforcement agencies. *State ex rel. Toledo Blade Co. v. Telb* (1990), 50 Ohio Misc.2d 1, 552 N.E.2d 243; *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 18 OBR 437, 481 N.E.2d 632. Therefore, the city's promise to maintain the confidentiality of such records is rendered impossible by the law, nonperformance by the city is excused, and there is no breach of the contract.

■ Next, the TPPA asks this court to declare that the promise to participate in the investigations in an honest and forthright manner was specifically bargained for the obligation of confidentiality so as to be *quid pro quo*. This court does not find evidence in the record that the provisions were actually bargained in exchange for each other. Granted, both provisions are found in the same subsection of the contract and both deal with the internal affairs investigation of an employee, but there is no affirmative evidence in the record linking the two. This is in stark contrast to *Textile Workers Union of Am. v. Lincoln Mills* (1957), 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972, 979–980, cited in the TPPA's brief, where the court stated, "[T]he entire tenor of the history indicates that the agreement to arbitrate * * * was considered as *quid pro quo* of a no-strike agreement."

The TPPA repeatedly refers to the provisions as *quid pro quo* and offers an affidavit of D. Michael Collins, a TPPA member since 1973, union officer since 1982, and participant in contract negotiations since 1982. Collins refutes the city's claim (as put forth in an affidavit of its Chief of Bargaining and Representa-

tion) that the confidentiality provision was intended to ensure that a police officer and legal counsel maintained confidentiality of information obtained in interviews. He asserts that no such basis is found in the TPPA's negotiation notes until 1990, which is when the city states it informed the TPPA of the city's understanding of the original negotiated intent. In other words, the TPPA rebuts the city's claim that they are unrelated without offering evidence of relatedness.

In fact, there is some evidence the provisions are unrelated by virtue of the fact that the compelled participation requirement was a part of past contracts since 1974, but the confidentiality requirement did not appear until 1979. We find that the trial court did not err in not finding a contractual *quid pro quo* relationship.

■ The TPPA further requests that, because the city is excused from its confidentiality obligation, we declare that the TPPA members are likewise excused from their promise to participate. We refuse to do so for several reasons. First is our finding that the provisions are not *quid pro quo* and in consideration of the other. Second, the court cannot rewrite or revise the contract, but rather must enforce it to the extent possible. Courts will enforce a contract to the extent it conforms to the law if part of the consideration is legal and part unenforceable or illegal, and if the contract is severable. *Federica v. Murray* (Hamilton C.P. 1950), 66 Ohio Law Abs. 164, 45 O.O. 473, 101 N.E.2d 813.

■ Except for the confidentiality provision, the contract terms are legal and enforceable, and support the promise of compelled participation. Therefore, if the contract is severable, it will be enforced to the extent possible.

■ The severability of a contract is a question of law and depends upon the intent of the parties:

"Whether a contract * * * is entire or divisible depends generally upon the intention of the parties, and this must be ascertained by the ordinary rules of construction, considering not only the language of the contract, but also, in cases of uncertainty, the subject-matter, the situation of the parties, and circumstances surrounding the transaction, and the construction placed upon the contract by the parties themselves." *Huntington & Finke Co. v. Lake Erie Lumber & Supply Co.* (1924), 109 Ohio St. 488, 143 N.E. 132, paragraph one of the syllabus. See, also, *Cooper, Straub, Walinski & Cramer v. Prestige Advertising, Inc.* (Jan. 25, 1985), Lucas App. No. L 84–237, unreported, 1985 WL 8378.

Applying these factors to the case at hand, we note first that neither party seeks total rescission of the contract, but that each argues for its continued enforcement, albeit to a different extent. Second, the subject matter of the contract is labor, governing terms and conditions of employment, not a one-time sale of goods. Third, the structure of the contract reveals various rights and

responsibilities arising at different times, to remain in effect over a period of three years and beyond, and may be performed in part, not just as a whole.

■ Further evidence of severability is a savings clause in the contract, which provides the following:

"If any article or section of this contract or any rider thereto should be held invalid, illegal or unenforceable by operation of the law or by any tribunal of competent jurisdiction, * * * the remainder of this contract or any rider thereto * * * shall not be affected thereby. It is the further intent of the parties that should any article or section of this contract be found invalid, illegal, unenforceable or inoperative, that section or article shall be renegotiated in an attempt to provide validity, legality, operativeness [*sic*] or acceptability to such section or article." Section 2129.99.

Such severability clauses are not illegal and are often effective. *P.D.T. & Co. v. Bollinger* (July 8, 1992), Hamilton App. No. C–910452, unreported, 1992 WL 161412. Inclusion of such a clause clearly shows the parties intended the contract to be severable.

■ Because there are legal and enforceable terms of the contract and the contract is severable, the remainder of the contract is enforceable, including TPPA's obligation to participate in internal affairs investigations. Further, although the *quid pro quo* issue is decided on contract principles, public policy supports the same outcome. In other words, the compelled participation of police offers in internal affairs investigations regarding official duties is not solely a contractual responsibility, but rather is properly recognized as a duty outside collective bargaining agreements as well. See *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 555 N.E.2d 940, and *Telb, supra.* For all the foregoing reasons, the TPPA's second, third and fourth assignments of error are found not well taken.

Next we turn to the TPPA's first assignment of error, regarding exhaustion of the grievance procedure. Assuming, without deciding, that the TPPA did exhaust its grievance procedure before invoking the court's jurisdiction, in light of our finding that there was no breach of the contract with respect to the release of documents, it was harmless error not to rule on the issue of breach of contract at that time. Civ.R. 61. Therefore, TPPA's first assignment of error is found not well taken.

Finally, as its fifth assignment of error, the TPPA claims error in the trial court's order dismissing its claim for an injunction to prevent compelled participation in investigations. Based upon the foregoing findings, it was not error to dismiss its request for injunctive relief, and the fifth assignment of error is found not well taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellants pay the court costs of this appeal.

*Judgment affirmed.*

MELVIN L. RESNICK and SHERCK, JJ., concur.