**Marcus T. SMITH, Plaintiff,**

v.

**BENEFICIAL OHIO, INC., Defendant.**

**No. C–3–03–115.**

United States District Court,
S.D. Ohio,
Western Division.

July 29, 2003.

Charles J. Roedersheimer, Legal Aid Society of Dayton, Dayton, OH, for Plaintiff.

Victor A. Walton, Jr., Vorys, Sater, Seymour & Pease, Cincinnati, OH, for Defendant.

## DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO STAY LITIGATION PENDING ARBITRATION (DOC. # 7); CASE STAYED; DIRECTIVE TO DEFENDANT

RICE, Chief Judge.

Plaintiff Marcus T. Smith is a homeowner who obtained high-interest mortgage loans, which included financed credit life and credit disability insurance, from Defendant Beneficial Ohio, Inc. ("Beneficial"), dba Beneficial Mortgage Company of Ohio. Plaintiff alleges that Defendant's actions in connection with these loans violated the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(a) and 1639; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. and § 1640(a); and state law.[1] Pending before the Court is Defendant's Motion to Stay Litigation Pending Arbitration (Doc. # 7), based on Arbitration Riders that Plaintiff signed as part of his loan transactions. For the reasons assigned, Defendant's Motion is SUSTAINED.

■ The Court begins with a discussion of the scope of the Federal Arbitration Act ("FAA"). That Act was designed to quell the traditional common-law hostility to arbitration clauses and to ensure enforcement of such agreements. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *see Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). To that end, Congress provided that provisions in any "contract evidencing a transaction involving commerce" which provide for settlement by arbitration of disputes arising out of such contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2 (1947). The Supreme Court has clarified that the FAA applies to virtually all contracts, and that only employment contracts of transportation workers are exempted from FAA. *Circuit City*

1. Plaintiff's Complaint was filed on March 6, 2003, in the Montgomery County Court of Common Pleas. On April 4, 2003, Defendant removed the litigation to this Court, asserting that this Court has federal question subject matter jurisdiction.

*Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

The Supreme Court has construed the FAA as establishing a liberal policy in favor of arbitration. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24, 103 S.Ct. 927. Recent Supreme Court authority has further made clear that arbitration under the FAA is a matter of contract enforcement: "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.... Arbitration under the [FAA] is a matter of consent, not coercion.'" *Waffle House,* 534 U.S. at 294, 122 S.Ct. 754 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

In determining whether the parties agreed to arbitrate their dispute, the Court is to use the federal substantive law of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* The FAA mandates that district courts refer parties to arbitration on issues as to which the parties have agreed to arbitrate. *Byrd,* 470 U.S. at 218, 105 S.Ct. 1238. Moreover, the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 20, 103 S.Ct. 927 (emphasis in original).

In its Motion, Beneficial indicates that Plaintiff executed two identical documents, entitled "Arbitration Rider," as part of his two loan transactions with the company. The Arbitration Rider is a two-page document, which provides, in pertinent part:

> This Arbitration Rider is signed as part of your Agreement with Lender and is made a part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counterclaims, and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed....

(Doc. # 7, Ex. D & E). Farther down the first page, the Rider sets forth the arrangement for the payment of arbitration fees by Plaintiff and Beneficial. The paragraph provides:

> If Lender files a Claim, Lender shall pay all the filing costs. If you file a Claim, the filing costs shall be paid as follows: (a) Lender agrees to pay for the initial cost of the filing [of] the Claim up to the maximum amount [of] $100.00; (b) for the filing costs over $100.00, such additional cost shall be divided equally between us up to the amount charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all costs over the amount charged by the arbitration administrator for a Claim equal to your loan amount shall be paid

by you. The cost of up to one full day of arbitration hearings will be shared equally between us. Fees for hearings that exceed one day will be paid by the requesting party. We shall each bear the expense of our respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator for which we are responsible.

On the top of the second page, the Arbitration Rider further states:

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

(*Id.*) The Arbitration Rider also contains a severability provision, indicating that "[i]f any portion of this Arbitration Rider is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Rider of the Agreement." Plaintiff printed and signed his name to both Arbitration Riders.

Recognizing that the Arbitration Rider contains a fee-splitting provision, Defendant states in its Motion that it "hereby agrees to pay these filing fees and the actual costs of arbitration." (Doc. # 7 at 3, n. 1). Plaintiff has responded that he does not object to the Motion to Stay, provided that any decision on said motion incorporates Defendant's representation that it will pay all costs of arbitration (Doc. # 10 at 1). Plaintiff asserts that Defendant's concession constitutes a unilateral and self-serving modification of the Arbitration Rider by Defendant in an attempt to avoid a finding by the Court that the terms of the arbitration clause are unconscionable. Plaintiff further argues that the Court should adopt the position that cost-splitting provisions *per se* deny litigants an effective forum for the vindication of their statutory rights.

■ As acknowledged by Plaintiff, Defendant has offered to pay all of his arbitration costs, thus eliminating the financial burdens of arbitration. Both parties note that this Court concluded in *Cross v. Beneficial Ohio Inc.,* Case No. C–3–01–463, Docket # 51 (S.D.Ohio Sept. 18, 2002), that the defendant's offer to pay the plaintiffs' arbitration costs mooted the issue of the expense of arbitration for the plaintiffs. However, earlier this year in *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir.2003), a decision filed subsequent to this Court's *Cross* ruling, the Sixth Circuit rejected the defendant's argument that its subsequent written agreement to pay the plaintiff's arbitration expenses mooted the issue of the validity of the cost-splitting provision. The Sixth Circuit reasoned:

Our concern is that cost-splitting provisions will deter potential litigants from bringing their statutory claims in the arbitral forum. When the cost-splitting provision is in the arbitration agreement, potential litigants who read the arbitration agreement will discover that they will be liable, potentially, for fees if they bring their claim in the arbitral forum and thus may be deterred from doing so. Because the employer drafted

the arbitration agreement, the employer is saddled with the consequences of the provision *as drafted.* If the provision, as drafted, would deter potential litigants, then it is unenforceable, regardless of whether, in a particular case, the employer agrees to pay a particular litigant's share of the fees and costs to avoid such a holding.

317 F.3d at 676–77 (emphasis in original). Thus, the Court of Appeals has expressly rejected the contention that an arbitration agreement may be enforced, without evaluating the validity of a fee-splitting provision, based solely on the defendant's offer to pay the plaintiff's arbitration expenses. Consequently, the Court must evaluate whether the cost-splitting agreement in the Arbitration Rider renders the Rider unenforceable.

■ As an initial matter, Plaintiff asks the Court to reconsider its use of a case-by-case "actual cost" standard concerning fee-splitting provisions. The Court will briefly comment upon that issue. As noted by the parties, in *Cross v. Beneficial Ohio Inc.,* Case No. C–3–01–463, Docket # 51 (S.D.Ohio Sept. 18, 2002), this Court concluded that "a fee provision in an arbitration agreement is only an oppressive term if the individual plaintiff will, in fact, incur prohibitive expenses." In that Decision, this Court relied upon the Supreme Court's decision in *Green Tree Financial Corp.-Ala. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), in which that Court addressed whether an arbitration agreement is rendered unenforceable due to silence in the agreement regarding the allocation of costs. The Supreme Court concluded that "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* Thus, this Court concluded that the *Green Tree* court did *not* endorse the idea that *any*

incurring of arbitration expenses by an employee is necessarily prohibitive. Rather, the Supreme Court's reasoning supports an examination of the *actual* effect of a fee-splitting provision on the plaintiff's ability to pursue her statutory claim, particularly in light of the fact that total litigation expenses frequently far exceed the cost of arbitration.

In *Morrison, supra,* the Sixth Circuit applied similar reasoning and expressly rejected the suggestion that cost-splitting provisions *per se* deny litigants an effective forum for the vindication of their statutory rights. *Id.* at 658–59. Rather, it also endorsed a case-by-case approach to determining whether such a provision denies potential litigants the opportunity to vindicate their statutory rights. *Id.* at 659. Thus, binding Sixth Circuit precedent has now rejected the *per se* approach proffered by Plaintiff, and this Court will not disregard that precedent. Accordingly, the Court declines to adopt the *per se* standard for reviewing fee-splitting provisions, as requested by Plaintiff.

■ Turning to the Arbitration Rider at issue, the Sixth Circuit recently expounded on the method by which a district court should evaluate the validity of cost-splitting provision. Recognizing that a case-by-case approach should be employed, the court of appeals held that "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Morrison,* 317 F.3d at 663. The Sixth Circuit distinguished its approach from that used in the Fourth Circuit, noting that its approach looks to the possible "chilling effect" of the cost-splitting provision on similarly situated potential litigants, as opposed to its

effect merely on the actual plaintiff in a given case. *Id.*

In the present case, Plaintiff has provided an affidavit, indicating that he has low income, limited resources, and incurs large monthly medical expenses. It is likely that other individuals in Plaintiff's position, *i.e.*, individuals with high-interest mortgage loans, also suffer from poor credit and few economic resources. Thus, Plaintiff has substantiated his assertion that the costs of resolving his dispute before an arbitrator would be cost prohibitive. Accordingly, the Court concludes that the fee-splitting provision of the Arbitration Rider would deter Plaintiff and similarly situated individuals from vindicating their statutory rights in an arbitration proceeding. Accordingly, that provision is unenforceable.

 Although the fee-splitting provision may not be enforced, the Arbitration Riders signed by Plaintiff contain a severability provision, which provides that the invalidation of one provision in the Rider, *i.e.*, the cost-splitting provision, will not invalidate the remainder of that Rider. Under Ohio law, the severability of a contract is a question of law and depends upon the intent of the parties. *Morrison,* 317 F.3d at 674, citing *Toledo Police Patrolmen's Ass'n v. City of Toledo,* 94 Ohio App.3d 734, 641 N.E.2d 799, 803 (1994). The Arbitration Rider indicates an intent by the parties to sever the fee-splitting provision, rather than invalidating the Arbitration Rider due to the prohibitive expense. In addition, that provision may be deleted without affecting the remaining arbitration provisions. The Court further notes that enforcing the remainder of the Arbitration Rider merely allows the parties to enjoy the benefits of their bargain without an excessive financial burden on Plaintiff. Accordingly, the Court concludes that the unenforceable cost-splitting provision in the Arbitration Rider is sever-

able, and the remainder of the Arbitration Rider is enforceable. Based on the remaining terms, none of which have been challenged by Plaintiff, Plaintiff is required to arbitrate his claims against Defendant. Accordingly, Defendant's Motion to Stay Litigation Pending Arbitration (Doc. # 7) is SUSTAINED.

For the foregoing reasons, Defendant's Motion to Stay Proceedings Pending Arbitration (Doc. # 7) is SUSTAINED. To reiterate, the fee-splitting provision in the Arbitration Rider is unenforceable. Defendant must pay all of the costs incurred as of result of this arbitration.

The captioned cause is stayed pending arbitration. Defendant is to advise the Court of the status of the arbitration at 60–day intervals beginning with the date of the filing of this Decision and Entry.