# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 11, 2020 Session

## TKACH STOKES v. ALLENBROOKE NURSING AND REHABILITATION CENTER LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-0908-19      Rhynette N. Hurd, Judge**

———————————————————

### No. W2019-01983-COA-R3-CV

———————————————————

In this health care liability action, the defendant moved to compel arbitration based upon an agreement entered into between the parties that provided for binding arbitration. The plaintiff opposed the defendant's motion, taking specific umbrage at a provision in the parties' agreement that indicated the expenses of arbitration would, by default, be subject to a 50/50 split. Contending that he was unable to pay for arbitration expenses, the plaintiff opposed enforcement of the arbitration agreement by advancing a cost-based unconscionability defense. Although the defendant acted to relieve the plaintiff of this asserted burden by offering to pay for the costs of arbitration, the trial court held that the subject fee-splitting provision in the agreement was unconscionable and denied the motion to enforce the agreement and compel arbitration. For the reasons stated herein, while we agree with the trial court that, under the facts of this case, the fee-splitting provision was unconscionable, we hold that the trial court erred in denying the defendant's motion to compel arbitration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined

Brent E. Siler and S. Keenan Carter, Memphis, Tennessee, William Davis Frye, Ridgeland, Mississippi, for the appellant, Allenbrooke Nursing and Rehabilitation Center, LLC.

Phillip Nathaniel Harvey and Parke S. Morris, Memphis, Tennessee, for the appellee, Tkach Stokes.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Tkach Stokes ("Mr. Stokes") commenced litigation in this matter on March 1, 2019 when he filed a complaint against Allenbrooke Nursing and Rehabilitation Center, LLC ("Allenbrooke") in the Shelby County Circuit Court. Among other things, the complaint alleged that Mr. Stokes had contracted sepsis due to the negligence of a nurse at Allenbrooke, and further, it averred that Mr. Stokes had "suffered severe and permanent injuries including maiming, disfigurement, multiple amputations, loss of enjoyment of life, massive hospital bills, pain and suffering, and the loss of any chance to ever live outside a nursing home environment." A jury demand was included.

Following the filing of the complaint, on April 11, 2019, Allenbrooke moved to compel arbitration and to stay the trial court proceedings. In support thereof, Allenbrooke noted that the parties had entered into an arbitration agreement, one that Mr. Stokes had signed on two occasions. The proffered three-page arbitration agreement, which Allenbrooke attached to a memorandum in support of its motion to compel arbitration, indicated that the right to a jury trial was waived and that "[a]ny and all disputes . . . shall be submitted to binding arbitration where the amount in controversy exceeds $25,000." As is relevant to our discussion here, the agreement specified that "[t]he expenses of the arbitration shall be divided between the parties equally unless otherwise specified in the decision of the Arbitrator(s)."

Mr. Stokes opposed Allenbrooke's motion to compel arbitration and advanced a cost-based unconscionability defense, noting in relevant part as follows: "Plaintiff has no income and sizeable monthly living expenses. Plaintiff will never be able to afford paying his portion of the arbitration costs." In responding to Mr. Stokes' argument on the enforcement of the parties' agreement, Allenbrooke acknowledged that a fee-splitting arrangement could be deemed unconscionable if the fees related to arbitration precluded the vindication of rights in an arbitral forum. It nonetheless suggested that Mr. Stokes' argument about unconscionability and his alleged inability to pay were "moot" concerns because Allenbrooke had offered to pay the entire costs of arbitration. Thus, Allenbrooke argued that Mr. Stokes could not carry his burden of proving that the costs associated with arbitrating his claims would be prohibitively expensive.

A hearing concerning the enforceability of the arbitration agreement was held, and on October 17, 2019, the trial court entered an order denying Allenbrooke's motion to compel arbitration. Within its order, the trial court stated that the parties' agreement to arbitrate was "unenforceable for the reasons stated during the hearing." A review of the transcript from the underlying hearing indicates that the trial court regarded the agreement as "unconscionable." In relevant part, the trial court remarked as follows:

As Defendant has just said there is no contest that the Plaintiff is not able to pay. And so . . . even if it is one arbitrator, with the estimate that we have here, is $30,000. It is an unconscionable contract. And so I am denying the motion to enforce the arbitration.

This appeal followed.

## DISCUSSION

On appeal, Allenbrooke challenges the trial court's denial of its motion to compel arbitration. In reviewing such a dispute, we are guided by the same standards that apply to this Court's review of bench trials. *Cabany v. Mayfield Rehab. & Special Care Ctr.*, No. M2006-00594-COA-R3-CV, 2007 WL 3445550, at *3 (Tenn. Ct. App. Nov. 15, 2007). As then-Judge Koch previously explained when expounding upon this principle for this Court:

The standards this court uses to review the results of bench trials are well settled. With regard to a trial court's findings of fact, we review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000).

. . . .

The presumption of correctness afforded by Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. *Cumberland Bank v. G & S Implement Co., Inc.*, 211 S.W.3d 223, 228 (Tenn. Ct. App. 2006). Accordingly, we review a trial court's resolution of legal issues without employing a presumption of correctness and reach our own independent conclusions regarding these matters.

*Id.*

Here, in spite of the arbitration agreement that exists between the parties, Mr. Stokes has opposed Allenbrooke's efforts to submit his case to an arbitral forum based on his inability to pay for the costs of arbitration. His specific defense, which is a cost-based unconscionability argument in the vein of a defense discussed by the United States Supreme Court in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), has been examined by this Court several times before. *See, e.g., Philpot v. Tenn.*

*Health Mgmt., Inc.*, 279 S.W.3d 573 (Tenn. Ct. App. 2007); *Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d 892 (Tenn. Ct. App. 2006). In *Rosenberg*, this Court quoted favorably to an Eighth Circuit Court of Appeals decision as correctly articulating the *Green Tree* requirements:

> A fee-splitting arrangement may be unconscionable if information specific to the circumstances indicates that fees are cost-prohibitive and preclude the vindication of statutory rights in an arbitral forum. *See Green Tree*, 531 U.S. at 90, 121 S.Ct. 513, 148 L.Ed.2d 373; *Dobbins*, 198 F.3d at 717. The burden of showing that arbitrators' fees will be cost-prohibitive falls on the party seeking to avoid arbitration. *Green Tree*, 531 U.S. at 92, 121 S.Ct. 513, 148 L.Ed.2d 373. The Supreme Court has not established what quantum of proof is necessary to meet that burden. *Id.* We require more than just a hypothetical inability to pay, however, to overcome the federal policy favoring arbitration. *See Dobbins*, 198 F.3d at 716–17. The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party. If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration.

*Rosenberg*, 219 S.W.3d at 910 (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053-54 (8th Cir. 2004)).

In further clarifying the scope of the unconscionability inquiry, a later panel of this Court opined as follows:

> [W]e believe that up-front costs should be considered because the arbitration agreement may unreasonably favor the drafter of the agreement since such high up-front costs will deter the pursuit of claims. This is particularly true when the up-front costs of arbitration are disproportionately high compared to the initial costs of instituting litigation. In such cases, the drafter of the agreement stands to avoid litigation, because the other party has agreed not to pursue it, and to avoid arbitration, because the costs are so high as to prohibit many claimants from pursuing a remedy in that forum. Thus, we conclude that an agreement to arbitrate that places excessive costs on the claimant as a precondition to arbitration may be unconscionable because of the inequality of the bargain, the oppressiveness of the terms, or the one-sided advantage to the drafter. Consequently, the costs to initiate or pursue arbitration . . . is a factor to be considered in determining whether the agreement to arbitrate is enforceable.

*Hill v. NHC HealthCare/Nashville, LLC*, No. M2005-01818-COA-R3-CV, 2008 WL 1901198, at \*16 (Tenn. Ct. App. Apr. 30, 2008).

Notably, the *Hill* panel was of the opinion that whereas previous decisions in this Court had in essence applied a legal framework cribbed from *Green Tree*, which was a case espousing a concern for the vindication of federal statutory rights, a prohibitive cost argument was only relevant in cases involving state law claims to the extent it furthered a state law unconscionability defense. *Id.* at \*13-15. Indeed, whereas the *Hill* panel did not dismiss the potential relevancy of prohibitive cost arguments in cases involving purely state law claims, it reasoned that such arguments should merely be a factor relevant to a finding of unconscionability, not a separate ground for invalidating an agreement. *See id.* at \*15 ("[C]osts to pursue arbitration are relevant, if at all, as one of the considerations in the fact-based inquiry as to unconscionability.");[1] *see also Trigg v. Little Six Corp.*, 457 S.W.3d 906, 915 (Tenn. Ct. App. 2014) (noting that, in *Hill*, "the Middle Section diverged somewhat" from one of its earlier opinions examining costs connected to arbitration).

In the trial court in this case, Mr. Stokes submitted a declaration wherein he attested to his financial condition:

> 2. I currently live at Spring Gate Rehabilitation and Health Care Center in Memphis, Tennessee.
>
> 3. I receive $730 per month from Social Security and am allotted $30 per month for spending money. The remaining $700 is used to pay for my nursing home monthly living charges, with TennCare making up the difference and paying for any and all additional expenses associated with living at Spring Gate Rehabilitation and Health Care Center.
>
> 4. I have no current job or any means of making additional money to pay to hire an arbitrator. Currently, due to my condition, I have no fingers or hand on my left arm, which were all amputated, and my right hand was also mostly amputated. I only have a portion of my right thumb that was amputated above the last joint and no other fingers. Both of my legs were amputated above the knee. I require total care for all of my activities of daily living and am dependent upon nursing home staff to provide such care.
>
> 5. I recently inherited a home located . . . here in Shelby County,

---

[1] We observe that the Tennessee Supreme Court granted permission to appeal in *Hill*, but it ultimately dismissed the appeal as moot once the parties in that case reached a resolution of the underlying claims.

Tennessee that was recently assessed by the Shelby County Tax Assessor's office as being worth $15,200 as of October, 2018. I understand that this home is in need of multiple, expensive repairs. I question whether the home has any underlying value other than the land itself.

6. If I sell the home and receive more than $2,000, then such funds would automatically declare me ineligible for TennCare. I would then qualify as a private pay patient and would have to use any such proceeds to cover my monthly living expenses at the Spring Gate facility which I believe would be more than $3,000 per month as a private pay patient.

7. I am also the father of five children with four of them under the age of eighteen (18).

Evidence was also submitted as to the costs of potential arbitrators for this case, costs Mr. Stokes argued he clearly could not afford given his financial circumstances and the nature of his case.

At a hearing on the matter in the trial court, Allenbrooke did not contest Mr. Stokes' inability to pay for the costs of arbitration. Rather, it simply maintained that such inability was legally irrelevant, with its counsel arguing that Allenbrooke had "taken that issue . . . out of contention by offering to pay." In later elaborating upon this argument, defense counsel stated as follows:

[A]s far as the exhibit that I was just given, he has found some arbitrators, and those are their hourly rates. I think the agreement says there is going to be one arbitrator. I don't dispute that it might go on for a week, Your Honor. But the fact of the matter is we are paying for it, Your Honor. And, again, I heard Mr. Morris's statements in talking about the unique situation where his client can't afford it. You know, what is he affording? We are paying for the arbitrator. We are saying that we are taking all of that out of consideration.

. . . .

Green Tree and those cases say we look at this plaintiff and look at his ability to pay. And we are not contesting his statements on Mr. Stokes's ability to pay. Again, the issue is we have taken that risk out by offering to pay.

The trial court, of course, ultimately chose to reject this "offer to pay" argument, hence the present appeal.

Does Allenbrooke's offer to pay for the costs of arbitration negate Mr. Stokes' unconscionability defense? That is the initial question we are tasked with addressing in this appeal, a question that Allenbrooke maintains we should answer in the affirmative. In relevant part, Allenbrooke reasons that the trial court erred in failing to consider its offer to pay for the costs of arbitration as controlling because such an offer "shows that there is no likelihood that [Mr. Stokes] will be subject to any additional costs in arbitration." Although Allenbrooke notes on appeal that Tennessee courts have not precisely addressed this issue, it argues that many courts have found that a defendant's offer to pay the costs of arbitration moots or forecloses any argument that the opposing party would be subject to prohibitive fees.

There is no doubt that several courts have held as Allenbrooke urges this Court to do. *See, e.g.*, *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 157 (D.D.C. 2002) ("[E]ven if the plaintiff had adequately demonstrated a prima facie showing of prohibitive expenses, the Court would conclude that the defendant's offer to pay all fees and expenses of arbitration effectively obviated any concerns the plaintiff may have raised regarding her ability to vindicate her claims in an arbitral forum because of the fee-splitting provision in the arbitration agreement."); *Baugher v. Dekko Heating Techs.*, 202 F. Supp. 2d 847, 850 (N.D. Ind. 2002) (holding that the defendant had the "option of avoiding . . . possible nullification of the arbitration agreement by offering to pay the costs and fees associated with arbitration"). Respectfully, however, we cannot countenance such a rule under Tennessee law. As to the narrow question of whether an arbitration agreement's cost provision is unconscionable, Allenbrooke's suggested rule cannot be followed. In reaching our opinion on this issue, we are persuaded by the discussion in *Hill* that, in a case like this where the claims at issue implicate only Tennessee law and not a federal statutory right, state unconscionability law must be the polestar for examining a cost prohibitive argument, not *Green Tree* and its progeny. As such, we take specific heed of the fact that Tennessee jurisprudence directs that a determination of contract unconscionability is "based on the circumstances as they existed at the time the parties executed the contract." *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461 (Tenn. Ct. App. 2009). This being the case, we reject a party's after-the-fact offer to pay the costs of arbitration as being relevant to the unconscionability inquiry, just as some other courts have done. *See, e.g.*, *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 259 (Ill. 2006) ("[A] defendant's after-the-fact offer to pay the costs of arbitration should not be allowed to preclude consideration of whether the original arbitration clause is unconscionable."); *Delta Funding Corp. v. Harris*, 912 A.2d 104, 113 (N.J. 2006) ("[C]ontract unconscionability must be decided based on the contract as written[.]").[2] Accordingly, we are of the opinion that the trial

_____

[2] Aside from the fact that Tennessee law directs unconscionability to be determined based on circumstances existing at the contract's execution, we are of the opinion that such an approach aligns with our state judiciary's oft-cited concern about access to justice. Were we to endorse Allenbrooke's suggestion that its offer to pay nullified the concern about Mr. Stokes' inability to pay for the costs of arbitration, we would incentivize drafters of arbitration agreements to draft arbitral costs provisions that

court did not err in refusing to regard Allenbrooke's offer to pay as a fact that mooted Mr. Stokes' raised unconscionability defense.

The unenforceability of the costs provision here,[3] however, does not end our discussion. Although we agree with the trial court on the narrow issue that Allenbrooke's offer to pay is not outcome determinative as to the unconscionability analysis, the question still begs as to whether this case should be sent to arbitration. The looming question is one of severability.

Is the costs provision severable? We note that per the parties' agreement, the unenforceability of one provision of the agreement was not to be a death knell to the overall agreement to arbitrate. Indeed, the arbitration agreement stated as follows on this issue: "If any provision of this Agreement is held to be unenforceable by reason of law, the provision will be modified to reflect the parties' intention to arbitrate their claims, and all remaining provisions shall remain in full force and effect."

In a previous decision where an arbitration agreement contained a severability clause, this Court ruled that arbitration should proceed notwithstanding an offensive provision, *see Knaffl v. Douglas Co.*, No. 03A01-9901-CH-00006, 1999 WL 894203, at *1, 4 (Tenn. Ct. App. Oct. 15, 1999) (noting the policy of favoring enforcement of arbitration agreements and remanding for arbitration proceedings under surviving terms of the contract), and our Supreme Court has specifically instructed us that "when the provisions of a contract are legally severable, we must give effect to portions of the contract that may be enforced and invalidate only those portions of the contract that are unenforceable." *Baugh v. Novak*, 340 S.W.3d 372, 384 (Tenn. 2011); *see also In re Baby*, 447 S.W.3d 807, 834-35 (Tenn. 2014) (noting that enforcement of remaining terms comported with parties' intent as expressed in contract's severability clause). Here, the parties' intent as expressed through their contract was clear: if a particular provision was

---

effectively inhibit and discourage access to arbitral forums. Indeed, were we to regard an offer to pay as an absolution that moots a cost-based unconscionability defense, the potential silencing effect of an arbitral costs provision could go judicially unchecked and evade scrutiny. The courts should not be in the business of endorsing a rule that creates an atmosphere for such consequences to manifest.

[3] As noted before, Allenbrooke's arguments at the trial court hearing seemed to be singularly focused on the alleged mooting of Mr. Stokes' unconscionability defense by dint of its offer to pay for the costs of arbitration. Its counsel even openly acknowledged that Allenbrooke did not contest the statements made pertaining to Mr. Stokes' inability to pay. Although Allenbrooke now raises certain objections to the sufficiency of Mr. Stokes' evidence (while also raising evidentiary objections that do not appear to have been lodged with the trial court), Mr. Stokes maintains that such objections have been waived. Based on the terms of the contract in this case, we need not extensively wade into the dispute over this matter. For the purposes of our analysis herein, we regard the terms of the arbitration agreement's cost provision as oppressive to Mr. Stokes and do not question the trial court's corresponding holding that the cost provision is unconscionable. We hold, however, that even in this situation, the parties should still be ordered to arbitration given a severability provision contained in their agreement. *See infra*.

deemed to be unenforceable, it was not to thwart their overriding intention to arbitrate.

Upholding the parties' agreement to arbitrate is consistent not only with the parties' expressed intent, but it is also in accord with the frequently-expressed understanding by courts that a deficient arbitral costs provision does not constitute a material term of an arbitration agreement. *See, e.g.*, *Underwood v. Chef Fransico/Heinz*, 200 F. Supp. 2d 475, 481 (E.D. Pa. 2002) ("Provisions related to the obligations of the parties to pay for an arbitration can easily be separated from the remainder of an agreement to arbitrate. Moreover, such obligations are collateral to the claim for relief."). Here, only the costs provision has been at issue. This is not a case where the arbitration agreement should not be enforced because it is plagued by multiple defects in the agreement that go to the essence of the parties' bargain or where the entire agreement to arbitrate is somehow tainted.[4] No doubt, under such circumstances, the prospect of severability would be different.

Because only the costs provision was at issue here, and given the parties' stated intention to arbitrate even if certain provisions of their agreement were deemed unenforceable, we hold that the trial court erred in failing to order arbitration. As other courts have done in this situation where an arbitral costs provision is unenforceable but nonetheless severable, we hereby reverse the trial court's denial of the motion to compel arbitration and order that arbitration take place at the expense of Allenbrooke, the drafter of the agreement and the party seeking to compel arbitration. *See Harris*, 912 A.2d at 113 n.5, 114 (holding that the offer to pay by drafter of agreement would not moot the unconscionability analysis but noting that severance would be possible and that the drafter of the agreement seeking to compel arbitration would be responsible for costs: "[I]f the agreement is held to permit the shifting of arbitration costs to Harris, then the unconscionable cost-shifting provision must be severed from the agreement. In that eventuality, Delta, which previously offered to pay all of Harris's arbitration costs, would be responsible for the entire cost of arbitration."); *Smith v. Beneficial Ohio, Inc.*, 284 F. Supp. 2d 875, 880 (S.D. Ohio 2003) ("To reiterate, the fee-splitting provision in the Arbitration Rider is unenforceable. Defendant must pay all of the costs incurred as of result of this arbitration."); *Carter v. Countrywide Credit Indus., Inc.*, 189 F. Supp. 2d 606, 620 (N.D. Tex. 2002) (invalidating fee-splitting arrangement, holding rest of contract enforceable under severability clause, and ordering the defendants to be responsible for all fees incurred in the arbitration).[5]

---

[4] As one court vividly remarked when discussing the severability issue, "You don't cut down the trunk of a tree because some of its branches are sickly." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003); *see also* Steven W. Feldman, 21 Tenn. Practice: Contract Law and Practice § 7:6 (August 2020) ("An illegal contract term should not render the entire contract void unless the forbidden provision is so basic to the whole scheme of the contract and so interwoven with all terms that the contract must stand or fall as an entity.").

[5] We would further observe that ordering Allenbrooke to pay for the costs of arbitration incident to the severance of the drafted costs provision here comports with language in the contract to which

**CONCLUSION**

Although Allenbrooke's offer to pay for the costs of arbitration did not moot Mr. Stokes' unconscionability defense, we nonetheless hold that arbitration should be ordered at Allenbrooke's expense for the reasons stated herein. Accordingly, we reverse the trial court's decision to deny enforcement of the agreement and remand the case to the trial court for the entry of an order compelling arbitration between the parties at Allenbrooke's expense.

_____
ARNOLD B. GOLDIN, JUDGE

---

Allenbrooke directed both this Court and the trial court. Specifically, the parties' severability provision provides that not only will remaining provisions stay in full force, but it also indicates an intent that any deficient provision "will be modified to reflect the parties' intention to arbitrate their claims." Ordering Allenbrooke—who has already expressed such a willingness—to pay the costs of arbitration pursuant to this language allows Mr. Stokes to pursue a vindication of his rights in an arbitral forum per the parties' expressed intention to arbitrate.