OPINION *Page 2 
{¶ 1} The defendant-appellant, Paul Lindsay, appeals the judgment of conviction and sentence filed by the Logan County Common Pleas Court.
 {¶ 2} On May 19, 2003, Lindsay was convicted of unlawful sexual conduct with a minor in Logan County Common Pleas Court case number CR02-12-0239. The trial court sentenced Lindsay to 15 months in prison and notified him on the record that upon release from prison, he may be placed on post-release control for a period of five years. However, the court's sentencing judgment entry in that case, which was filed on June 4, 2003, stated that Lindsay could be placed on post-release control for three years. No appeal was filed in case number CR02-12-0239.
 {¶ 3} In July 2004, Lindsay was released from prison and placed on post-release control for five years. On July 24, 2004, Lindsay attended a party at the home of Melinda Johnston. There were approximately 25-30 guests, many of whom were underage and drinking alcoholic beverages. Johnston consumed between 15 and 20 beers, and possibly some Jägermeister, and Lindsay was also drinking. Throughout the evening, Johnston and Lindsay talked, and Lindsay attempted to teach her a hip-hop dance move. Other than dancing together, there was no physical contact between Johnston and Lindsay. *Page 3 
 {¶ 4} During the early morning hours of July 25, 2004, Johnston took a prescription sleeping pill and went to bed after asking her boyfriend, Eric Taylor, to supervise the remaining party-goers. Lindsay followed her as she tried to go up the stairs, but she pushed him away, told him she was going to bed, and closed the door to the stairway. Johnston went to her bedroom and passed out on the bed, fully clothed. Taylor later went upstairs to check on her and covered her with a blanket. Sometime later, Taylor went upstairs and found Lindsay kneeling over Johnston, who was lying on the floor between the bed and the wall. Taylor went downstairs and asked several other guests if he was "seeing things." Three or four of the guests went upstairs and looked in Johnston's bedroom where they saw Lindsay's "naked butt" "moving up and down" over Johnston, who was not moving or making noise.
 {¶ 5} After discussing their discovery outside of the bedroom, they re-entered the room to find Lindsay putting on his clothes and Johnston crying and complaining of a possible rape. Lindsay went outside, and several guests prevented him from leaving until the police arrived. Johnston called 9-1-1 and reported the offense as an "attempted rape." Upon arrival, the responding officer asked Lindsay what was happening, and Lindsay stated that he had stopped when she told him to. Knowing that the call was in response to a possible rape, the *Page 4 
officers arrested Lindsay and took him to the police station. Johnston was examined at a local hospital that morning.
 {¶ 6} On December 14, 2004, the Logan County Grand Jury indicted Lindsay on one count of rape, a violation of R.C. 2907.02(A)(1)(c), a first-degree felony, and one count of sexual battery, a violation of R.C. 2907.03(A)(3), a third-degree felony. The indictment also contained a notice that Lindsay had been on post-release control at the time of the new felony offenses, and stated that the trial court could impose a prison term "equal to the time remaining under post-release control or twelve (12) months, whichever is greater." The notice also stated that the sentence could be imposed consecutively to any sentence imposed for the offenses charged in the indictment.
 {¶ 7} At arraignment, Lindsay pled not guilty to the charges. Discovery was filed, and Lindsay filed a motion to waive jury trial. Having granted Lindsay's motion, the court conducted a bench trial. Both the state and the defense presented testimony and moved exhibits into evidence, and on June 6, 2005, the trial court found Lindsay guilty on both charges.
 {¶ 8} The state filed a motion to classify Lindsay as a sexual predator, and the court held a joint sentencing and sexual predator classification hearing. At the hearing, the court merged the rape and sexual battery convictions as allied offenses of similar import, and the state elected to proceed with sentencing on the *Page 5 
rape conviction. The trial court considered a pre-sentence investigation report and counsels' arguments before imposing a prison term of six years. The court considered the forensic evaluation completed at the Forensic Psychiatry Center for Western Ohio, the factors in R.C.2950.09(E), and the facts of the case before classifying Lindsay as a sexual predator. The court also ordered that Lindsay serve "the time remaining on post-release control (4 years, six months, and six days) in prison and said term SHALL BE SERVED CONSECUTIVELY to the six (6) year term imposed herein for the new felony." (Emphasis in original) (J. Entry, Jul. 14, 2005, at 3).
 {¶ 9} We granted Lindsay's motion for delayed appeal, and he now asserts four assignments of error for our review.
 First Assignment of Error The trial court violated Paul Lindsay's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court found Mr. Lindsay guilty of rape and sexual battery.
 Second Assignment of Error The trial court erred in sentencing Paul Lindsay to a prison term of four years, six months and six days for his violation of his post-release-control [sic] when the court was only authorized to impose a maximum of two years, six months and six days.
 Third Assignment of Error The trial court erred in sentencing Paul Lindsay to a sentence of four years, six months and six days for his violation of post-release-control [sic] when the court lacked personal jurisdiction *Page 6 over Paul Lindsay for the previous case depriving him of Due Process of the Law.
 Fourth Assignment of Error R.C. 2929.141 is unconstitutional because it is contrary to Crim.R. 49 and therefore in contravention to OH Const. art. IV § 5(B).
 {¶ 10} In the first assignment of error, Lindsay contends there was insufficient evidence to convict him of either rape or sexual battery. Under the sufficiency of the evidence standard, an appellate court must determine "`whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Bridge, 3d Dist. No. 1-06-30, 2007-Ohio-1764, quotingState v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355,684 N.E.2d 668.
 {¶ 11} Lindsay was found guilty of both rape and sexual battery. The rape statute, R.C. 2907.02(A)(1)(c), provides:
 No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to *Page 7 resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.
Under the former version of R.C. 2907.01(A), "sexual conduct" was defined as:
 vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 {¶ 12} In its case in chief, the state presented testimony from eight witnesses. There is no dispute that Johnston and Lindsay were not, and have never been, married to each other. "Sexual conduct," in this case, requires proof that Lindsay penetrated Johnston's "vaginal cavity."[1]
Johnston testified that at the time of the offense, she was menstruating and wearing a tampon. (Trial Tr., Jan. 8, 2007, at 58). She stated that as she came to, she felt pain in her vagina and "felt pushing." (Id. at 57). Johnston testified that she felt Lindsay penetrate her at least past the vaginal lips, but she did not think he was able to achieve full penetration. (Id. at 59; 91). On cross-examination, Johnston stated she had no doubt that her vagina had been penetrated. (Id. at 59). Johnston testified that by the time she went to the hospital, "everything" in her abdominal area was hurting, and she continued to experience pain in her pelvic region for two to three weeks after the rape. (Id. at 60; 66). During direct examination, the prosecutor asked Johnston *Page 8 
why she reported the offense as an "attempted rape." Johnston indicated that she thought full penetration was necessary to allege rape, and therefore, she told the 9-1-1 dispatcher and the hospital staff that she had been a victim of "attempted rape." (Id. at 62).
 {¶ 13} Taylor testified that he went upstairs and put a blanket over Johnston after she went to bed. (Id. at 104). He stated that Johnston was on the bed and appeared to be passed out. (Id. at 105). When Taylor went upstairs a second time, he found Johnston motionless and lying next to the bed with Lindsay kneeling over her. (Id. at 107). Taylor went downstairs and mentioned his observation to other guests, who went to check on Johnston. (Id. at 108). Taylor stated that when the other guests entered the bedroom, Johnston started screaming and crying about being raped. (Id. at 110). Taylor followed Lindsay to the driveway to confront him, and Lindsay stated "I didn't do nothin.' I stopped." (Id.).
 {¶ 14} Other witnesses testified that Johnston went to bed sometime around 4:30 a.m. Despite some minor inconsistencies in their testimony, the witnesses stated that Taylor went upstairs to check on Johnston. When he came downstairs, he said something to the effect of "tell me I'm not seeing things." Three or four guests went upstairs and found Lindsay's "naked butt" or "booty" "moving up and *Page 9 
down" over Johnston's motionless body as she lay on the floor between the bed and the wall.
 {¶ 15} Officer Jason Boy of the Bellefontaine Police Department testified that he responded to Johnston's address to investigate a reported rape. Boy testified that he arrived at Johnston's home and approached Lindsay, who he knew and who was standing in the driveway. Boy asked Lindsay what was happening, and Lindsay stated, "I stopped when she told me to." (Id. at 15). Boy arrested Lindsay, talked with witnesses, photographed Johnston's bedroom, and continued the investigation at the hospital and at the police station.
 {¶ 16} Dr. John Fearon examined Johnston at the emergency room. (Id. at 272). Fearon testified that he found no semen or sperm, that he removed Johnston's tampon at the hospital, and that wearing a tampon during sex would cause a woman to be in pain. (Id. at 275). Fearon noted no bruising or trauma, and stated that he found no evidence of sexual intercourse. (Id. at 280; 289).
 {¶ 17} On his own behalf, Lindsay testified that he went upstairs after Johnston went to bed. (Id. at 311). He stated that he found her sitting on her bed talking to Taylor, so he went downstairs again. (Id. at 312). Lindsay stated that he went upstairs a second time to "talk" to Johnston and found her lying on the floor between the bed and the wall. (Id. at 313). Lindsay stated that Johnston appeared to be asleep, so he woke her up, and she began kissing him and taking off her *Page 10 
clothes, except for her bra. (Id. at 314). Lindsay believed Johnston wanted to have sex with him, so he took off his pants. (Id. at 315). He then realized that Taylor was in the bedroom too, so he began to put his clothes back on. (Id.). Lindsay testified that the closest he came to having sex was when he knelt over Johnston on one knee. (Id. at 320). He stated that he did not attempt to penetrate her vagina. (Id.). Lindsay also stated that anybody who testified about his naked butt moving up and down was a liar. (Id. at 331).
 {¶ 18} Any direct evidence of penetration is limited to Lindsay's testimony and Johnston's testimony, which is set forth above. The other witnesses' testimony is circumstantial evidence, as none of them saw Lindsay insert his penis into Johnston's vagina. However, they did observe Lindsay's "naked butt" "moving up and down" over Johnston's motionless body. Circumstantial evidence is good evidence and has the same probative value as direct evidence. Jenks, at paragraph one of the syllabus.
 {¶ 19} In his brief, Lindsay goes to great lengths in arguing that the state did not prove penetration into the "vaginal cavity." This Court has previously held that vaginal penetration is proved when any object is applied with sufficient force to cause the labia majora to spread.State v. Farr, 3d Dist. No. 13-06-16, 2007-Ohio-3136, at ¶ 17, citingState v. Roberts, 10th Dist. No. C-040547, 2005-Ohio-6391, at ¶ 62, fn.11; State v. Brewer, 2nd Dist. No. 03CA0074, 2004-Ohio-3572, *Page 11 
at ¶ 31-32; State v. Falkenstein, 8th Dist. No. 83316, 2004-Ohio-2561;State v. Grant, 2nd Dist. No. 19824, 2003-Ohio-7240; State v.Blankenship (Dec. 13, 2001), 8th Dist. No. 77900; State v. Childers
(Dec. 19, 1996), 10th Dist. No. 96APA05-640-640; State v. Nivens (May 28, 1996), 10th Dist. No. 95 APA09-1236; State v. Ulis (July 22, 1994), 6th Dist. No. L-93-247; State v. Carpenter (1989), 60 Ohio App.3d 104,573 N.E.2d 1206. In this case, we need not rely upon there merely having been sufficient force to cause the labia majora to spread. Johnston testified she was certain Lindsay penetrated her vagina. She stated that she felt pain throughout her pelvic region, which was caused by Lindsay pushing against her tampon. Construing the evidence in favor of the state, there is sufficient evidence of sexual conduct.
 {¶ 20} While Lindsay has not disputed the sufficiency of the evidence concerning Johnston's mental state, we note that this Court has previously held that voluntary intoxication is a "mental condition" as used in R.C. 2902.03(A)(1)(c). State v. Harmath, 3d Dist. No. 13-06-20,2007-Ohio-2993, at ¶ 12, quoting State v. Martin (Aug. 14, 2000), 12th Dist. No. CA99-09-026; citing In re: King, 8th Dist. Nos. 79830, 79755, 2002-Ohio-2313, at ¶ 17-24. All of the witnesses testified that Johnston had been drinking alcohol throughout the night and early morning hours. Johnston testified that she drank 15-20 beers. Taylor testified that Johnston passed out when she went to bed. Johnston also testified *Page 12 
that she was taking several prescriptions for depression, and that prior to going to bed, she took the prescribed dose of Ambien to help her sleep. (Trial Tr., at 50-52). Lindsay stated he did not know if Johnston was passed out or asleep when he found her on the floor. (Id. at 332). Fearon testified that Johnston's blood alcohol content was .14 when he examined her at the hospital, and that it would have been higher earlier in the morning. (Id. at 277). Construing this evidence in the state's favor, there is sufficient evidence to support a conviction for rape.
 {¶ 21} Lindsay was also charged with and convicted of sexual battery. The sexual battery statute provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person submits because the other person is unaware that the act is being committed." R.C. 2907.03(A)(3). Specifically, Lindsay challenges the conviction based on the state's failure to prove "sexual conduct." However, the evidence discussed above also supports the conviction for sexual battery when it is construed in favor of the state. The first assignment of error is overruled.
 {¶ 22} In the second assignment of error, Lindsay contends that the trial court erred when it sentenced him to serve four years, six months and six days in prison for the post-release control violation. Lindsay contends when he was sentenced in case number CR02-12-0239, the court filed an erroneous judgment entry, which stated he could be placed on post-release control for a maximum of *Page 13 
three years. Therefore, Lindsay contends that the trial court can order him to serve only two years, six months, and six days in prison for his post-release control violation, which resulted from the felonies charged in this case.
 {¶ 23} In response, the state contends that the trial court simply made a clerical error in preparing the judgment entry in case number CR02-12-0239. The state contends that in CR02-12-0239, the court notified Lindsay of the appropriate post-release control time on the record during both the change of plea hearing and the sentencing hearing. The state contends that the court's clerical error in preparing the judgment entry can be corrected with a nunc pro tunc entry.
 {¶ 24} R.C. 2929.19 sets forth the requirements of a felony sentencing hearing. Specifically, R.C. 2929.19(B)(3)(c) requires the sentencing court to notify the defendant that he or she will be subject to post-release control. R.C. 2967.28 establishes the periods of post-release control, which may be imposed on an offender. In case number CR02-12-0239, Lindsay was convicted of a felony sex offense, which requires a mandatory term of five years on post-release control. R.C. 2967.28(B)(1).
 {¶ 25} In Hernandez v. Kelly, 108 Ohio St.3d 395, 2006-Ohio-126,844 N.E.2d 301, the Supreme Court held:
 an offender may not be placed on post-release control or be subject to sanctions for violating the terms of that control unless the trial court who sentenced that offender advised the offender about post-release control at the sentencing and also *Page 14 incorporated the same notice into the judgment entry of sentencing.
See also State v. Streeter, 3d Dist. No. 1-06-75, 2007-Ohio-2999, at ¶ 7, citing Hernandez; State v. Jordan, 104 Ohio St.3d 21,2004-Ohio-6085, 817 N.E.2d 864. We have reviewed the transcript of the sentencing hearing in case number CR02-12-0239.[2] On the record, the court advised Lindsay that he was subject to post-release control for five years. However, in its judgment entry, the court wrote that Lindsay was subject to post-release control for three years. As such, Lindsay asks this Court to reduce his sentence for the post-release control violation from four years, six months, and six days to two years, six months, and six days. However, for reasons that benefit the appellant, we are unable to do so.
 {¶ 26} In response to the court's holding in Hernandez, the General Assembly amended R.C. 2929.19(B)(3)(c) and enacted R.C. 2929.191. The amended version of R.C. 2929.19(B)(3)(c) states that R.C. 2929.191:
 applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(3)(c) of this section and failed to notify the offender pursuant to division (B)(3)(c) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.
R.C. 2929.191(A)(1) states that if an offender was sentenced prior to July 11, 2006 and the trial court failed to notify the offender that he or she would be subject to *Page 15 
post-release control, either at the hearing or in the sentencing judgment entry, the court may hold a new hearing subject to R.C.2929.191(C) and prepare a new judgment entry to correct errors or add missing terms relating to post-release control. The statute is clear that the corrections to the judgment entry must be made before theoffender is released from prison on the original sentence.
 {¶ 27} The statutes specifically address the trial court's "failure" to notify the offender either at the hearing or in the judgment entry of post-release control time. However, the statutes have been applied in situations where the trial court simply did not notify the offender and where the trial court incorrectly notified the offender. For example, inState v. Hill, 1st Dist. No. C-060727, 2007-Ohio-3085, the court considered a situation where the trial court had notified the offender that post-release control time would be discretionary, rather than mandatory as provided by statute. Subsequent to the Ohio Supreme Court's holding in Hernandez, the trial court vacated the offender's sentence and held a new sentencing hearing to correct its error concerning post-release control time. The First District held that the trial court properly applied the newly amended versions of R.C.2929.19(B)(3)(c) and 2929.191(A)(1) and resentenced the offender before he was released from prison. Id. at ¶ 3; 12.
 {¶ 28} Although the state contends that a simple nunc pro tunc entry will correct the court's oversight in its CR02-12-0239 sentencing entry, such remedy is *Page 16 
contrary to law. The trial court was required to correct its judgment entry prior to Lindsay's release from prison in July 2004. Once Lindsay was released from prison on the original sentence, the court was divested of jurisdiction and it could not, and cannot now, correct its sentencing judgment entry in CR02-12-0239. Streeter, at ¶ 10, citingHernandez, at ¶ 28, 30, 32. The court's error was not discovered until Lindsay committed a new felony offense, the instant offense. Because the original sentencing entry in CR02-12-0239 failed to advise the defendant of the statutorily required post-release control time, the judgment entry is void insofar as it addresses post-release control, and Lindsay cannot be convicted of or sentenced for a post-release control violation. See Streeter, at ¶ 12. The second assignment of error is sustained.
 {¶ 29} Lindsay urges us to consider the remedial judgment entry filed in Hernandez v. Wilkinson (N.D.Ohio), case number 1:06-CV-158. In that case, Henry Hernandez complained:
 as an individual and as the class representative of former inmates of Ohio's prison system * * * who underwent varying terms and degrees of statutory post-release control following their incarceration. In their initial and amended complaints, Plaintiffs brought suit under Section 1983 as against Terry Collins, Harry E. Hageman, and Cynthia Mauser, senior administrative officials of the Ohio Department of Rehabilitation and Correction and the Adult Parole Authority. * * * Plaintiffs sued Defendants in their individual capacities for alleged violations of Plaintiffs' constitutional rights under the First, Eighth, and Fourteenth Amendments. * * * Overall, Plaintiffs complain[ed] that Defendants "illegally imposed" statutory post- *Page 17 release control on the class members where the presiding Ohio trial courts failed to provide for such in Plaintiffs' sentencing journal entries.
Hernandez v. Wilkinson (N.D.Ohio Nov. 27, 2006), case number 1:06-CV-158. In November 2006, the parties reached an agreement concerning the equitable relief requested (either the modification or vacation of improperly imposed post-release control). Relevant to this case, the parties agreed that where the sentencing courts imposed three years of post-release control, but were required to impose a mandatory term of five years of post-release control, the offenders would be subject to post-release control for only the time declared by the sentencing courts.
 {¶ 30} The federal district court's judgment entry filed on November 23, 2006 reflects the parties' agreement; however, that portion of the judgment entry pertinent to Lindsay's case is illegal and contrary to public policy. R.C. 2967.28(B)(1) requires an offender to serve a mandatory term of post-release control for five years if the offender committed a sex offense. Not only is post-release control mandatory, but in this case, the five-year period of post-release control is mandatory. The parties' agreement to lesser time is clearly contrary to law. Contracts, which are illegal or contrary to public policy, are deemed void. See Brust v. McCarty (Jan. 17, 1985), 3d Dist. No. 14-83-21, at 4. The effect of the agreement reached in district court would be similar to the effect of a sentence improperly imposed in a murder case. The statutory penalty for murder is 15 *Page 18 
years to life in prison. R.C. 2903.02(D); 2929.02(B). Should a trial court sentence a convicted murderer to a sentence less than 15 years, the sentence would be contrary to the penalty established by the General Assembly, and therefore, void. R.C. 2929.02(B). See also State v.Beasley, 14 Ohio St. 3d 74, 75, 471 N.E.2d 774 ("Any attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void.").
 {¶ 31} Not only did the parties agree to an unlawful period of post-release control, but the district court accepted the agreement and adopted the agreement as its judgment.
 "The function and duty of a court is to apply the law as written." Beasley, at 75. As noted in Colegrove v. Burns (1964), 175 Ohio St. 437, `[c]rimes are statutory, as are the penalties therefore, and the only sentence which a trial court may impose is that provided for by statute * * *. A court has no power to substitute a different sentence for that provided for by statute or one that is either greater or lesser than that provided for by law.' Id. at 438. The state's failure to appeal an illegal sentence does affect the trial court's duty to impose sentence according to law. See State v. Thomas (1996), 111 Ohio App.3d 510, 512 * * *.
State v. Jackson, 10th Dist. Nos. 06AP-631, 06AP-668,2007-Ohio-1474, at ¶ 12, quoting State v. Ramey, 10th
Dist. No. 06AP-245, 2006-Ohio-6429, at ¶ 12. The federal court is bound to apply the substantive law of the state where it sits, in this case, Ohio law.
 {¶ 32} Hernandez v. Wilkinson was filed pursuant to 42 U.S.C. § 1983. The United States Supreme Court has held, "[i]n 42 U.S.C. § 1988, Congress `quite *Page 19 
clearly instructs [federal courts] to refer to state statutes' when federal law provides no rule of decision for actions brought under § 1983. Board of Regents of the Univ. of the State of New York v.Tomanio (1980), 446 U.S. 478, 484-485, 100 S.Ct. 1790, 64 L.Ed.2d 440, quoting Robertson v. Wegmann (1978), 436 U.S. 584, 98 S.Ct. 1991,56 L.Ed.2d 554. Absent constitutional issues, there is no federal law, which would control Ohio's post-release control statutes. While the imposition of an incorrect period of post-release control would constitute a constitutional violation, Ohio has provided a remedy. The General Assembly had enacted both R.C. 2929.19(B)(3)(c) and2929.19(A)(1) by the time the district court accepted the settlement inHernandez v. Wilkinson. Therefore, the district court was bound to follow Ohio's statutes, which, as stated above, require the trial court to correct its sentence prior to the offender's release from prison. Should the trial court fail to correct its sentence and the offender is released from prison, the sentencing judgment entry is void, and the trial court is without jurisdiction to correct the defect. The Ohio Supreme Court, in Hernandez v. Kelly, provided the remedy for such defect: no period of post-release control. The federal court should have applied Ohio law in fashioning the terms of its judgment entry, but since it did not, we elect to disregard that portion of the district court's judgment entry applicable to this case. The trial court's sentencing judgment entry was void but correctable up to Lindsay's time of release from prison. However, since the *Page 20 
court failed to correct the sentence prior to Lindsay's release from prison, he may not be placed on any period of post-release control for the original offense.
 {¶ 33} Our holding in this opinion does not take into consideration any other provision in the judgment entry filed by the federal district court in Hernandez v. Wilkinson. If a contract is divisible, the legal portions of the contract may be enforced, even if there are illegal portions. See Toledo Police Patrolmen's Assoc, Local 10, IUPA v.Toledo (1994), 94 Ohio App.3d 734, 740, 641 N.E.2d 799. Therefore, in this case, we continue to follow the precedent of this Court and the Ohio Supreme Court in finding the trial court's sentencing judgment entry in CR02-12-0239 void. Because the void sentencing judgment entry was not timely remedied, Lindsay is no longer subject to post-release control for the original offense.[3] The second assignment of error is sustained.
 {¶ 34} Having sustained the second assignment of error, the third and fourth assignments of error are moot. The judgment of the Logan County Common Pleas Court is affirmed in part and reversed in part. Lindsay's conviction and sentence *Page 21 
for violating post-release control are vacated, and this matter is remanded to the trial court for re-sentencing in accordance with this opinion.
Judgment affirmed in part reversed in part and cause remanded.
 PRESTON, J., concurs.
 SHAW, J., concurs in judgment only.
[1] In 2006, the General Assembly amended the statutory definition of "sexual conduct" so as to replace the phrase "vaginal or anal cavity" with the phrase "vaginal or anal opening." R.C. 2907.01(A). Am. Sub. H.B. No. 95, 2006 Ohio Laws File 99; Am. Sub. H.B. No. 490, 2002 Ohio Laws File 220.
[2] The sentencing transcript from CR02-12-0239 is part of the appellate record in this case because we granted the state's motion to supplement the record.
[3] Our holding as to Lindsay's original term of post-release control does not affect any post-release control time that may be imposed as part of the sentence for the new felonies. *Page 1